HELVERING, Commissioner of Internal Revenue, v. EDISON SECURITIES CORPORATION.

No. 3785.

Circuit Court of Appeals, Fourth Circuit.
June 3, 1935.

Frederick E. Youngman, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to Atty. Gen., on the brief), for petitioner and cross-respondent.

Thomas G. Haight, of Jersey City, N. J. (Robert H. Montgomery, of Washington, D. C., James O. Wynn, of New York City, J. Marvin Haynes, of Washington, D. C., and Roswell Magill, of New York City, on the brief), for respondent and cross-petitioner.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

This proceeding involves deficiencies in income taxes for the years 1925 and 1926 in the respective amounts of $10,471.41 and $100,210.91 of Edison Securities Corporation, a Maryland corporation. The case is brought to this court by petition for review filed by the Commissioner of Internal Revenue and by cross-petition for review filed by the taxpayer.

The first question relates to a determination by the Commissioner of the income tax deficiency for 1925, through the addition to income in that year of the sum of $180,000, which the Commissioner found that the taxpayer had received in liquidating dividends from Stevens & Wood, Inc., a Delaware corporation, in which the taxpayer controlled a substantial majority of the stock. The Commissioner therefore applied the provisions of section 201 (c) of the Revenue Act of 1926, 44 Stat. 9 (26 USCA '§ 932 (c), which provides in substance that amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock; and that if gain results from the exchange, it shall be subject to taxation. The Board, however, held on appeal, upon the facts submitted, that the amounts in question were not distributions in liquidation, and disallowed the deficiency. This action is in part the basis of the Commissioner's petition for review.

The total sum of $180,000 was made up of three dividends declared by the board of directors and received by the taxpayer on 5,000 shares of capital stock of Stevens & Wood, Inc., that is to say: $125,000 on May 12, 1925; $17,500 on May 27, 1925;

and $37,500 on October 27, 1925. An additional dividend of $7,500 was received by the taxpayer on or about May 12, 1926. The controversy is limited to the dividends declared in May, 1925, the taxpayer conceding that the subsequent dividends were liquidating dividends within the words of the section.

In our opinion, the record contains substantial evidence to support the conclusion of the Board that there was no deficiency for the year 1925. The Commissioner relies upon evidence tending to show that all of the dividends were paid in pursuance of a plan, formed before the declaration of any of the dividends, to dissolve Stevens & Wood, Inc. That corporation was organized to render engineering, construction, and managerial services to public utilities, and was given its name in recognition of the reputation of R. P. Stevens and F. B. Wood as engineers in that field. Serious differences of opinion arose between the taxpayer, the holder of the majority of the shares, and Stevens, with respect to certain policies of management; and after fruitless negotiations looking to a settlement, it was finally agreed on June 12, 1925, to dissolve the corporation. Although this date was subsequent to the declaration of the dividends whose character is in dispute, the Commissioner contends that the only logical inference from the facts is that dissolution had been previously agreed upon, and that the distribution of dividends was made prior to formal official action in order to avoid the payment of an income tax thereon. It is pointed out that the dividends were extraordinary and unusual in amount, and out of line with the previous policy of the corporation to accumulate a reserve; that Stevens had resigned and had demanded that his name be no longer used, as he had the right to do under contract with the corporation; and that he had formed another corporation, known as Stevens & Wood, Inc., to conduct a similar business. But, on the other hand, there was direct testimony that dissolution was not intended or decided upon prior to June, 1925; that in May, Stevens still hoped to be able to get control of the corporation, and to prolong its existence, and in the meantime had taken no steps to launch his new corporation upon active business; and it also appeared that the dividends declared in May, 1925, were paid out of surplus and not out of capital. An issue of fact was thus raised upon

which the decision of the Board, supported as it was by substantial evidence, is binding upon this court. We find nothing in the decision of the Board at variance with the decisions of the courts which hold that a dividend may be in liquidation although paid out of surplus and earnings, but that the question whether a dividend is a liquidating dividend or an ordinary dividend is to be determined by the facts as shown by the record. See Hellmich v. Hellman, 276 U. S. 233, 48 S. Ct. 244, 72 L. Ed. 544, 56 A. L. R. 379; Gossett v. Commissioner (C. C. A.) 59 F.(2d) 365; Tootle v. Commissioner (C. C. A.) 58 F.(2d) 576; Canal-Commercial T. & S. Bank v. Commissioner (C. C. A.) 63 F.(2d) 619.

The second question in the case relates to a series of three transactions in 1926, whereby the taxpayer disposed of certain shares of common and preferred stock owned by it in Republic Railway & Light. Company, a New Jersey corporation. The taxpayer's view was that all three transactions were performed in pursuance of a plan of corporate reorganization, under section 203 of the Revenue Act of 1926 (26 USCA § 934), whereby stock of the Republic Company, a party to the reorganization, was exchanged for stock in Penn-Ohio Securities Company, a Delaware corporation, also a party to the reorganization. The Commissioner, holding that the first transaction was not a reorganization, treated the entire profit therefrom as taxable, increased the taxpayer's taxable income for the year by the sum of $450,114.47, and determined a tax deficiency in the amount of $68,791.31. It was this determination that the taxpayer petitioned the Board to review; but no conflict arose as to the second and third transactions, both parties considering them as parts of a plan of corporate reorganization. The Board agreed with the Commissioner as to the first and third transactions and the taxpayer has acquiesced in this holding; but the Board held that the second transaction was not a part of the plan of reorganization, and was therefore fully taxable. This view would have justified the finding of a total tax deficiency of $100,210.91, but the Board merely sustained the Commissioner's determination within the limits of the deficiency already found since no increase had been claimed or pleaded by him.

In 1925 and 1926, the taxpayer owned common and preferred stock of the Republic Company, which had outstanding 113,-

974 shares, consisting of 62,060 shares of common stock and 51,914 shares of preferred, with equal voting rights. A plan of reorganization was submitted to the common stockholders, under which one share of the common stock was to be exchanged for 2 shares of no par common stock and $25 in bonds of a corporation to be formed to secure control of the Republic Company. For this purpose, the Penn-Ohio Company was incorporated on February 28, 1925, with 124,120 shares of no par stock, double the number of the shares of the common stock of the Republic Company. On April 28, 1925, the board of directors of the Penn-Ohio Company authorized the issue of its own bonds, in accordance with the plan, and by October 27, 1925, it had acquired 32,628 shares of the common stock of the Republic Company in exchange for 65,256 shares of no par Penn-Ohio Company common and $815,700 of its bonds.

Eastman, Dillon & Co., a copartnership which owned all of the stock of the taxpayer, and had financed the Republic Company, objected to the plan of reorganization as unfair to the preferred stockholders of the latter; and since 56,988 shares of the common stock out of a total 62,060 shares were necessary for control, and the taxpayer owned 11,506 shares thereof (as well as 9,993 shares of preferred stock), the plan could not be carried out without its consent. Bonbright & Co., who also owned stock in the Republic Company and had helped to finance it, favored the plan. A controversy ensued, which was finally settled by an agreement of January 29, 1926, between the taxpayer and Bonbright & Co., whereby the parties agreed to carry out the plan with amendments, more particularly described below, to provide for the exchange of the preferred stock of the Republic Company for preferred stock of the Penn-Ohio Company, to be issued, plus a certain amount of cash. At that time the parties to the agreement owned or controlled 56,439 shares of Republic stock, consisting of 32,628 shares of common stock previously acquired by Penn-Ohio Company, 2,312 shares of preferred stock owned by Bonbright & Co., and 11,506 shares of common and 9,993 shares of preferred owned by the taxpayer, so that they lacked only 449 shares of a majority. There remained 57,535 shares, consisting of 17,926 shares of common and 39,609 shares of preferred, in the hands of others.

On February 1, 1926, pursuant to the agreement of January 29, 1926, the dis-position by the taxpayer of the stock of the Republic Company, which constitutes the first transaction hereinbefore mentioned, took place. Bonbright & Co. then owned (or had arranged to acquire) 12,954 shares of Penn-Ohio stock, and $391,700 of its bonds. The taxpayer transferred to Bonbright & Co. 5,753 shares of the common stock, and 3,840½ shares of the preferred stock of the Republic Company, and received in exchange 6,477 shares of Penn-Ohio stock, $195,850 of its bonds, and $535,821.03 in cash. The result of the exchange was that each party to the agreement became the owner of equal amounts of the common and preferred stock of the Republic Company and of the stock and bonds of the Penn-Ohio Company; but the situation with regard to the control of Republic Company was not affected. As we have seen, the taxpayer treated this transaction in making its income tax return as a corporate reorganization within section 203 of the Revenue Act of 1926, but the Commissioner took the opposite view and the Board sustained the Commissioner.

The agreement of January 29, 1926, made provision for further steps to secure control of the Republic Company, covering both the common and the preferred stock. The parties agreed that each would contribute all of its holdings to a joint account, and would use its best endeavors: (1) To have the Republic Company's shares exchanged for Penn-Ohio shares, on the basis of one share of Republic common for 2 shares of Penn-Ohio common, and $25 in Penn-Ohio 7 per cent. bonds; (2) to have Penn-Ohio Company split its common stock, 4 for one, and sell enough thereof to raise the necessary funds for the following purposes; (3) to have Penn-Ohio Company call its bonds; (4) to have Penn-Ohio Company issue and exchange its preferred stock for preferred stock of the Republic Company, share for share, and pay an additional $34.50 per share; (5) to underwrite the offering to the public of Penn-Ohio Company common. It was further agreed that the details of the plan could be modified with the approval of the parties' attorneys.

Pursuant to this agreement, the second transaction, with which we are concerned on this branch of the case, took place on February 3, 1926. The taxpayer transferred its remaining 5,733 shares of Republic common to the Penn-Ohio Company, in exchange for 11,506 shares of Penn-Ohio common stock and $143,825 of Penn-Ohio

bonds. On this day, Penn-Ohio Company acquired in all 12,006 shares of Republic common. The record is not clear as to the details of this second transaction, and the Board was unable to determine precisely what had taken place; but, as we have seen, it held contrary to the opinion shared by both parties before it, that the exchange of stock in which the taxpayer participated was not made in the course of a corporate reorganization within the meaning of the statute.

On February 4, 1926, another step was taken in furtherance of the agreement of January 29, 1926. The Penn-Ohio Company had by that time acquired 70 per cent. of the common stock of the Republic Company. The board of directors of the Penn-Ohio Company resolved, subject to its stockholders' approval, to ·issue and exchange preferred shares of Penn-Ohio for preferred shares of Republic, on the basis of one share of Penn-Ohio and $34.50 in cash for one share of Republic. It was also resolved to redeem the outstanding bonds of Penn-Ohio; to split each of its common shares into 4 shares, and to issue $450,000 additional common shares, to be offered in blocks of five at $6.75 each, to each holder of an old share. Eastman, Dillon & Co., Bonbright & Co., and Harper and Turner agreed to buy all unaccepted shares on this basis. The stockholders approved the resolution of February 27, 1926, and the necessary amendment to the corporate charter to authorize the additional stock was secured. In short, the substance of the agreement of January 29, 1926, was adopted.

On March 30, 1926, in conformity with this action of the Penn-Ohio Company, the taxpayer engaged in the third transaction under examination. It exchanged 6,152½ shares of Republic preferred, together with the sum of $42.13 for 6,153 shares of Penn-Ohio preferred, and a cash sum amounting to $34.50 for each share of stock transferred, thus receiving a total of $212,278.50 in cash, in addition to the stock. After this date, Penn-Ohio Company continued to acquire Republic stock, and on April 3, 1926, secured actual voting control. The parties to the pending case have been in agreement throughout as to this third transaction, regarding it as part of a corporation reorganization within the terms of the statute, and the decision of the Board was also in harmony with this position.

The Board held that in applying subdivisions (a) to (g) of section 203 of the Revenue Act of 1926, 26 USCA § 934 (a–g), which lay down the rule governing the recognition of gain or loss in the exchange of stock or securities in one corporation for stock or securities in another, pursuant to a plan of reorganization the test is not whether there has been a purpose or plan to reorganize, but whether there has been an actual reorganization, as defined in subsection (h); that subsection (h) refers not to mere plans or executory agreements to reorganize, but to consummated reorganizations; and that it is only when such a reorganization is found to exist, that it becomes important or necessary to inquire whether exchanges or transfers made by a taxpayer were made in pursuance of the plan of reorganization, as described in subsection (b) (2). Holding this opinion, the Board concluded that the first transaction above described was merely an arrangement or dealing between two large stockholders in the two corporations, in which some of the shares owned by the one were sold to the other; and that while the transfers were preliminary to the execution of the plan to place the control of the Republic Company in the hands of the Penn-Ohio Company, they were complete in themselves and did not amount to a reorganization.

Applying the same rule to the second transaction, the Board said: "This must likewise be true as to the transaction in February consisting of the disposition by petitioner of the 5,753 shares of Republic common and the acquisition of 11,506 shares of Penn-Ohio common. It is difficult from the facts available in this record to determine just what happened and when. The Commissioner determined that this was an exchange by the petitioner, and this determination is presumptively correct and must be adopted as the fact unless the evidence is otherwise. We cannot say that the evidence overwhelms the presumption, although it leaves the details of this transaction in confusion. It is, however, clear that this transaction must have occurred prior to the plan suggested by the president of the Penn-Ohio Corporation on February 4 for securing control of the Republic preferred, without which there could be no voting control. * * * Thus it stands with no greater significance as a part of a statutory reorganization than did the earlier issue, and not pursuant to an

authoritative plan of reorganization but to the same indefinite plan of two minority, although substantial, shareholders."

With regard to the exchange of March 30, 1926, constituting the third transaction, the Board reached the opposite conclusion. It held that while this exchange did not give to the Penn-Ohio Company voting control of the Republic Company, it was a step in that direction and a part of the reorganization definitely planned at the time and approved by the shareholders of the Penn-Ohio Company on February 27, 1926. The Board said: "Given a clear and authoritative plan by one corporation to acquire stock control of another in an arrangement which partakes of the nature of a merger or consolidation, it is not essential that the acquisition be in a single transaction. While preliminary or casual acquisitions of less than a majority are not within the reorganization, those which are directly related to the process of deliberately acquiring control must be held to be so."

■ We are in accord with the Board's interpretation of the statute, that a mere plan to reorganize is not enough and that there must be actual reorganization to bring a transaction within its terms; but, in our opinion, the procedure of the Board in this case should not be sustained, whether the second transaction was or was not a reorganization within the meaning of the act. If that transaction was fully taxable as the Board held, the actual tax deficiency was $180,210.91, according to the Commissioner's calculation, and not $68,791.31, as he originally determined. But the Board limited the deficiency to the smaller sum because the Commissioner had made no claim for the increase. Obviously, this result should not stand unless it is required by the applicable statutes or reasonable rules of the Board. On the other hand, if the reorganization statute applied to the second transaction, the deficiency of $68,791.31 was too great, according to the calculation of the taxpayer, who points out that the Commissioner included in the income for 1926 the sum of $7500 received as a liquidating dividend from Stevens & Wood, Inc., which amount, in view of the Board's decision on the first branch of the case, was chargeable against the cost of the stock and did not constitute income; and that the Commissioner disallowed a deduction in this year of the sum of $51,950.73, which represented a net loss for 1925 carried forward into the year 1926. The Board did not pass on these claims of the taxpayer, because of the finding that the exchange involved in the second transaction was taxable, with the result that the tax therefrom would more than exceed the amount by which the tax for 1926 was increased by the Commissioner's action on the items mentioned. In this situation, unsatisfactory from either standpoint, both parties have petitioned for review.

It is necessary, therefore, to examine the circumstances under which the decision was rendered. It came as a surprise to both parties to the proceeding, for both regarded the exchange in the second transaction as falling within the statute and therefore did not discuss the matter in their briefs filed with the Board. After the decision, the Commissioner filed a motion with the Board for a rehearing in order that he might make claim for an increased deficiency, stating that if the limitation upon the amount of the deficiency should stand, taxable income for the year in the sum of $240,237.83 would escape taxation. The taxpayer resisted this motion, and after argument, it was denied. Thereupon, the taxpayer, acting under rule 50 of the Board, filed its computation of the tax liability in accordance with the Board's report. Subsequently, the Commissioner filed a written claim for an increased deficiency for the year in the sum of $100,210.91, asserting the right to the increase under section 274 (e) of the Revenue Act of 1926, 26 USCA § 1048c, which specifies that the Board shall have jurisdiction to redetermine the amount of the deficiency even if it be greater than the amount of the deficiency of which the taxpayer has been notified by mail, provided that claim therefor is asserted by the Commissioner at or before the hearing or a rehearing. But this claim was also denied, and the final order and judgment of the Board was that there was no deficiency in the income tax for 1925, and that there was a deficiency in the income tax for 1926 of $68,791.31.

■ The Board refused to entertain the claim for increased deficiency seemingly on the ground that the power given it by section 274 (e) is to be exercised only if the claim is asserted by the Commissioner at or before the hearing or a rehearing of the case, and because in the opinion of the Board, this stage had been passed when the Commissioner set up the claim in this case. We think that the power still per-

sisted, for there seems to be no reason why the word "hearing" should not be given a significance broad enough to include the whole proceeding down to the final decision. Ordinarily, a hearing in equity embraces the decision also. Joseph Dry Goods Co. v. Hecht (C. C. A.) 120 F. 760, 763; American Grain Separator Co. v. Twin City Separator Co. (C. C. A.) 202 F. 202, 205; Chicago Ry. Equipment Co. v. Blair (C. C. A.) 20 F.(2d) 10; International Banding Machine Co. v. Commissioner (C. C. A.) 37 F.(2d) 660. But here the purpose is manifest to give the taxpayer an opportunity to answer and resist the claim before it is made effective by the action of the Board. If this is done, a claim of increase may be made and considered with propriety, whether it is presented during the taking of the evidence or in the period allowed for oral arguments, or written briefs, or even subsequently during the hearing under rule 50; in short, at any time before or after the filing of the Board's findings of fact until the decision and judgment of the Board has been entered; or even later, in the event of a rehearing.

This statement, however, must be taken with the qualifications that the power to receive the claim should not be exercised unless a reasonable opportunity to oppose it is given to the taxpayer, and unless it is presented in accordance with reasonable rules laid down by the Board. If the question involved in the increase has been actually raised during the trial, and the taxpayer has presented his evidence and his views on the point, or has been given a chance to do so, the claim may be received at any time before the decision and allowed therein, if found to be correct; but the taxpayer ought not to be taken by surprise. Nor should the Board be required to receive a claim unless it is presented seasonably, in accordance with its rules, as for instance, rule 50, which forbids the parties to use the hearing on the computation, of deficiency, in accordance with the Board's announced findings, for the consideration of matters disposed of therein, or of new issues. Compare Davison v. Commissioner (C. C. A.) 60 F.(2d) 50; Weiller v. Commissioner (C. C. A.) 64 F.(2d) 480.

In the pending case, however, the new matter was not introduced by the parties but by the Board itself, and the subsequent course of the proceedings should have been shaped with this circumstance in mind. A sharp issue was raised as to a point upon which the parties had theretofore agreed, and although some evidence bearing on the subject had been put in the record in connection with the other transactions, it was obviously inadequate for the purpose now under discussion, for the Board itself said that it was difficult to tell from the available facts what had taken place. In this emergency, the Board might well have ordered a rehearing upon its own motion, and in any event, should have granted the Commissioner's motion to that end. Even after a full trial below, an appellate court has the power to remand a case for further proceedings if it has been tried on a wrong theory, Underwood v. Commissioner (C. C. A.) 56 F.(2d) 67, 73; and it cannot be doubted, in view of the purpose for which the Board was established and of the statutes governing its procedure, that it has equal power to do full justice to the parties while they are still before it.* Cf. Helvering v. Rankin, 295 U. S. 123, 55 S. Ct. 733, 79 L. Ed. ——.

---

* The Revenue Act of 1926 required that decisions affecting the liability of the taxpayer should not be made without notice, and an opportunity to be heard. The Commissioner of Internal Revenue was prohibited, except in cases of jeopardy, from assessing a deficiency in income taxes until after a notice of deficiency had been mailed to the taxpayer; and if he should be dissatisfied with the determination of the Commissioner, he could file a petition with the Board of Tax Appeals for a redetermination of the deficiency, section 274 (a) of the act, 26 USCA § 1048; and notice and an opportunity to be heard upon any proceeding instituted before the Board was required. Section 1000 of the act, 26 USCA § 1219 and note. Under the provisions of the act, section 1000, 26 USCA § 1211, the Board was continued as an independent agency in the executive branch of the government; but it is established that appellate powers were conferred upon the Board which are judicial in character; Old Colony Trust Co. v. Commissioner, 279 U. S. 716, 49 S. Ct. 499, 73 L. Ed. 918; Blair v. Oesterlein Machine Co., 275 U. S. 220, 48 S. Ct. 87, 72 L. Ed. 249; and from an adverse decision by the Board, either party was given a right to appeal to the Circuit Courts of Appeals, and these courts were given power to modify or reverse a decision of the Board if not in accordance with law, with or without remanding the case for a rehearing, as justice may require. Section 1003 of the act, 26 USCA § 1226.

92

We express no opinion on the merits of the question. The second transaction was so near in point of time, and so similar in purpose to the third, that there is ground for the taxpayer's contention. But a decision cannot be properly reached until all the facts are disclosed. The case must therefore be remanded for further proceedings in which the Board should also pass upon the contentions of the taxpayer, hereinbefore mentioned, that the sum of $7,500 received by it as a liquidating dividend from Stevens & Wood, Inc., in 1926, should not be included in its net income, and that it should be allowed the sum of $51,950.73, its net loss in the year 1925, as a deduction carried forward into the year 1926.

Upon the first question considered in this opinion relating to the character of the dividends received by the taxpayer from Stevens & Wood, Inc., the conclusion of the Board is affirmed.

Affirmed in part, and remanded for further proceedings.