Margaret E. Johnson Malmstedt, et al., Petitioner v. Commissioner of Internal Revenue, Respondent.
Malmstedt v. Commissioner
Docket No. 4647-71, 4649-71.
United States Tax Court
1979 Tax Ct. Memo LEXIS 389; 38 T.C.M. (CCH) 903; T.C.M. (RIA) 79901; April 10, 1979, Filed STERRETT
Memorandum Sur Order STERRETT, Judge: On January 8, 1979 respondent filed a Motion for Leave to File Amendment to Answer, and Amendment to Answer for each of docket Nos. *391 4647-71 and 4649-71. Also on January 8, 1979 respondent filed Respondent's Memorandum on Remand with Computations. Respondent's Memorandum on Remand raised three issues: 1. The basis for our finding that Johnson had an $82,062.32 basis in her Construction Company stock (respondent included certain figures representing his beliefs with respect to the source of our finding); 2. Whether Johnson and Malmstedt had income due to their release from a deficiency judgment entered after the second judicial sale of the Gold Mine property. Respondent's proposed amendments to answer would increase the claimed deficiencies in issue to reflect this added foreclosure income; and 3. Whether the current deductions allowed the partners by the Fourth Circuit's opinion for their interest and tax expenses and for their amortization of a loan refinancing fee should create net operating loss carryforward deductions in 1964, 1965 and 1966. On January 10, 1979, petitioners filed a motion asking that we allow Johnson net operating loss carryforward deductions in 1964, 1965 and 1966, and describing petitioners' beliefs with respect to the source of our determination that Johnson's basis in her Construction *392 Company stock was $82,062.32. Also on January 10, 1979, petitioners each filed on Opposition to Motion for Leave to File Amendment to Answer. A hearing on remand was held on January 10, 1979. The first issue with which we must deal relates to our determination that petitioner Johnson had an $82,062.32 basis in her Construction Company stock when that stock became worthless in 1964. The parties are in agreement with respect to how they think we derived that basis for Johnson. Although the parties are correct in their assumptions with respect to the origin of our determination, we believe, upon reconsideration of the evidence, that we too uncritically accepted petitioner Johnson's averments with respect to her Construction Company stock basis. In deriving the $82,062.32 basis we simply took at face value petitioner Johnson's own calculations on that point. Eighty-two thousand sixty-two dollars and thirty-two cents is the sum of $38,409.06, representing Johnson's capital account as shown on Construction Company's books, $35,853.26 representing Johnson's one-half interest in an account under the names of both Malmstedt and Johnson, and $7,800 representing Johnson's one-half interest *393 in certain accounts payable. We erred in two respects. First, Johnson's capital account of $38,409.06 included an amount of $33,000 which she simply had added to that account as her estimate of the increase in value of two separate tracts of land when the partnership combined them into one tract. We now hold that we were in error in permitting her to carry over said amount since she had no basis in that claimed increment in value. Secondly, we included in her stock basis amounts attributable to the above mentioned accounts payable. As we cannot tell from the record whether or not these notes were assumed by the corporation, we shall simply exclude them from consideration in determining Johnson's stock basis. Thus they shall neither increase nor reduce her basis in her Construction Company stock. See section 358(a)(1)(A)(ii), and subsection (d). Johnson's correct basis in her Construction Company stock is thus: ($38,409.06 - $33,000) + $35,853.26 = $41,262.32. The next issue with which we must deal involves respondent's motions to amend his answer to claim an increased deficiency. These motions were filed on January 8, 1979 over 7 years after the original answers were filed *394 in September 1971. The applicable code sections are sections 6214(a) and 7453. Section 6214(a) says: SEC. 6214. DETERMINATION BY TAX COURT. (a) Jurisdiction as to Increase of Deficiency, Additional Amounts, or Additions to the Tax. -- Except as provided by section 7463, the Tax Court shall have jurisdiction to redetermine the correct amount of the deficiency even if the amount so redetermined is greater than the amount of the deficiency, notice of which has been mailed to the taxpayer, and to determine whether any additional amount, or addition to the tax should be assessed, if claim therefor is asserted by the Secretary at or before the hearing or a rehearing. Section 7453 says in relevant part: [The] proceedings of the Tax Court and its divisions shall be concluded in accordance with such rules of practice and procedure (other than rules of evidence) as the Tax Court may prescribe * * *. Rule 41(a), Tax Court Rules of Practice and Procedure, says in material part: Otherwise a party *395 may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be given freely when justice so requires. * * * In deciding whether to grant respondent's motion we face, therefore, two questions: Is respondent's motion such as is contemplated by section 6214(a), and if so, does justice require that we allow respondent's motion at this time? Respondent's motion will be "timely" within the meaning of section 6214(a) if it is filed before a "rehearing." In the case of Boeing v. Commissioner, 47 B.T.A. 5 (1942), we defined "rehearing" in appellate practice to be "'a second consideration on further argument, given to a cause after decision.'" Boeing v. Commissioner, supra at 8. We believe that the hearing held herein on January 10, 1979 qualifies as a "rehearing" within the meaning of section 6214(a), and Boeing v. Commissioner, supra.At that time we heard the parties present their arguments with respect to respondent's motions to amend. Also at that time both parties argued the merits of their views with respect *396 to how this Court should deal with the issues raised by the Fourth Circuit's remand. As respondent's motion was made, therefore, before a rehearing, we find that it was timely. We believe that our view of the matter comports with that which would be adopted by the Fourth Circuit herein. The case of Helvering v. Edison Securities Corporation , 78 F. 2d 85 (4th Cir. 1935), reversing 29 B.T.A. 483 (1933), originated before the Board. We had decided one issue based on a theory not argued by either party. Helvering v. Edison Securities Corporation, 78 F. 2d at 90. Our decision created an increased deficiency but we refused to entertain respondent's motion to increase deficiency on the basis that his motion was untimely. The Fourth Circuit reversed and remanded saying (78 F. 2d at 91): [A] claim of increase may be made and considered with propriety, whether it is presented during the taking of the evidence or in the period allowed for oral arguments, or written briefs, or even subsequently during the hearing under Rule 50, in short, *397 at any time before or after the filing of the Board's findings of fact until the decision and judgment of the Board has been entered; or even later, in the event of a rehearing. In the case of Henningsen v. Commissioiner , 243 F. 2d 954 (4th Cir. 1957), the commissioner had included a certain item of income in the taxpayer's taxable year 1946. In his opening statement at the trial before the Tax Court the taxpayer declared that he would show that this income was includable in his 1947 taxable year. In response the government's counsel requested in his opening statement that he be allowed to amend his answer to claim an increased deficiency for 1947 if petitioner should actually be able to show that the income at issue was attributable to 1947. Petitioner carried his burden on this point and we granted respondent's motion to amend. His amendment was filed almost one month after the trial. The Fourth Circuit affirmed the propriety of our action saying at 959: We have held there is no reason why the word "hearing" should not be given a significance broad enough to include the whole proceeding down to the final decision, since the purpose of the statute is to give *398 the taxpayer an opportunity to answer and resist the claim before it is made effective by action of the court; and that if this is done a claim of increase is made in time whether it is presented during the taking of the evidence or in the period allowed for argument or briefs, or even subsequently during the hearing under Rule 50 * * *; in short, at any time before the decision and judgment of the court have been entered. In the case of Commissioner v. Ray , 88 F. 2d 891 (7th Cir. 1937), revg. a Memorandum Opinion of this Court, the Seventh Circuit took a similar position. In that case petitioner's taxable years 1926 and 1928 were before the appeals court. Respondent had originally claimed a deficiency for petitioner's taxable year 1926 based on a theory that would have allocated certain income to that year. We decided the case according to a theory under which petitioner realized the income in 1928 -- yet we had also denied respondent's motion to amend his answer to claim an increased deficiency for 1928. The Seventh Circuit reversed saying at 892: There is no reason why the Board should not be as liberal in allowing amendments to claims as courts are in allowing *399 amendments to pleadings. The statute fixes the time limit within which the claim may be asserted, -- "at or before the hearing or a rehearing." The Commissioner was within the time thus fixed. The court went on to note that the commissioner had made no new or different claim, that respondent had always asserted that the amount in issue was income and that petitioner had met this assertion squarely. The case now before us is similar to those before the Fourth and Seventh Circuits in Helvering v. Edison Securities Corporation, 78 F. 2d at 85, Henningsen v. Commissioner, supra, and Commissioner v. Ray supra. We think that, with respect to the issues discussed in this Memorandum Sur Order, petitioners have had ample opportunity to answer and resist respondent's claims. On that basis we hold that respondent's motion was timely. Thus we come to the question of whether or not justice requires that we grant respondent's motion to amend his answer. The relevant facts are these: respondent argued his case before us on a theory that all the amounts expended on Gold Mine between 1960 and 1963 were capital expenditures. Petitioners argued that *400 they were all currently deductible. Respondent's theory had the obvious effect of increasing petitioner's basis in the Gold Mine property. Thus, while respondent stated on brief that the second foreclosure on the Gold Mine property generated a $69,881.18 deficiency and judgment and included this amount, when forgiven, in the amount realized by the partnership on the second foreclosure sale, the net effect of this additional amount realized was to produce a total of only $934.79 in long term capital gain or $467.39 to each of Malmstedt and Johnson, unadjusted for section 1202. Yet as had been the case in Henningsen v. Commissioner, supra and Commissioner v. Ray, supra, respondent's theory was not fully accepted by either this Court or the Fourth Circuit. This Court found that certain interest expenses, real estate taxes, and a loan refinancing fee, totaling $339,279.73, were currently deductible. We found that the other amounts in issue were capital expenditures. These findings obviously decreased petitioners' Gold Mine basis and increased the importance of the income generated by the debt forgiveness. Contrary to the apparent understanding of respondent *401 as described in his Memorandum on Remand with Computations, we also found that the second foreclosure sale produced a deficiency of $69,881.18 excluding interest and that: "Properties, Inc. the maker, and the guarantors, Johnson, Construction, Inc, Malmstedt, and Joseph Stroud were released from liability for this deficiency in 1965." Finally we held that any gain or loss on the forclosure sale, including any gain generated by the deficiency judgment's forgiveness was recognizable only in 1964. Respondent, however, did not attempt then to amend his answer to claim an increased deficiency even though Johnson's taxable year 1964 was before us. See John Gerber Company v. Commissioner, 44 B.T.A. 26, 31-32 (1941). Nor did his computation for entry of decision under Rule 155, Tax Court Rules of Practice and Procedure, include any amount in respect to this forgiveness income. Petitioner did not object to this computation and we adopted it as the basis for our decision herein. On appeal the Fourth Circuit agreed that a deficiency judgment in the amount of $69,881.18 had been entered against the partners in respect of the second Gold Mine foreclosure sale from which they *402 were released in 1965. The circuit court did not disturb our determination that all income on the forclosure sale was recognizable in 1964. The Fourth Circuit's judgment was filed with us on July 24, 1978. Respondent, apparently concluding that the Fourth Circuit's opinion had held the deficiency judgment forgiveness to be a taxable event, while our opinion had not, filed the two motions for leave toi answer and the two amendments to answer referred to above. These amendments claim increase deficiencies in either 1964 or 1965 based on this foreclosure gain. In his response to respondent's motion petitioner Malmstedt (docket No. 4649-71) argued that he is not properly before us and that respondent's motion to amend is "illegal" with respect to him because "neither party filed any Notice of Appeal * * * [and] no appeal was heard with respect to the merits of the case Bertil Malmstedt v. Commissioner of Internal Revenue." Therefore, Malmstedt concludes that his case is final. Section 7481. As petitioner Malmstedt filed his notice of appeal with this Court on January 5, 1977 followed by respondent's cross notice of appeal on January 26, 1977, and since no dismissal thereof has *403 been entered, we find he is still before this Court. Petitioner Johnson's argument that our decision is final with respect to the foreclosure income issue alone -- as opposed to the rest of the case -- is creative. We find no evidence in the record that this issue was severed or somehow matured into finality while the rest of the case has not. Given the state of the record and these above described events we do not believe that petitioners can legitimately argue surprise at respondent's motion. They have long been apprised of respondent's belief that the foreclosure debt forgiveness generated income. At the hearing herein and by their memoranda both petitioners had ample opportunity to argue the merits of respondent's motion. While it is unfortunate that respondent did not file his motion before this case was appealed to the Fourth Circuit, we conclude that it is in the interest of justice to allow respondent to correct his oversight now. See Helvering v. Edison Securities Corp., supra, Commissioner v. Ray, supra.
Next we address the issue of the timing and character of the deficiency forgiveness income. Firstly, we do not believe that our *404 finding, that the gain from the foreclosure sale can only be recognized in 1964, should be interpreted as our conclusion on the timing of the deficiency forgiveness income. While it is clear that the deficiency judgment arose in the foreclosure proceedings, we think it equally clear that the forgiveness thereof was the independent volitional act of a third party. This forgiveness income is something more than merely additional "sale" proceeds. We conclude that petitioners received cancellation of indebtedness income in 1965 when the debt was cancelled. Further we conclude that this income was long term capital gain. Had the foreclosure transaction generated a loss, such a loss would have been deductible to the partnership as long term capital loss. See Diamond v. Commissioner 43 B.T.A. 809, 812 (1941). Had the deficiency been discharged in 1964 it would have been additional long term capital gain. See R. O'Dell & Sons v. Commissioner, 169 F. 2d 247, 248 (3rd Cir. 1948). The delay should not cause a change in the character of the income. See Arrowsmith v. Commissioner, 344 U.S. 6 (1952). Finally we deal with petitioners' claim of net *405 operating loss carryforward deductions in 1964, 1965 and 1966 due to alleged losses incurred in their taxable years ended December 31, 1960 through 1963. This is not the first time we have seen this claim.Petitioners argued it when this case was first before us. It is based on their claim of a right to currently deduct the same $528,664.19 Gold Mine start up cost at issue in determining the Gold Mine basis described to above. As mentioned above, respondent argued that these expenditures were entirely capital while petitioners claimed that they were currently deductible in full. In our opinion herein we held that the $150,000 loan refinancing fee was amortizable over the life of the loan refinanced, and allowed the current deduction of certain real estate taxes and interest expenses. We found that the rest of the partnership outlays were capitalizable. We did not however allow petitioners their claimed net operating loss carryforward deductions. We based our disallowance on three points. We held: (1) that petitioners had neither proven the amount of loss for any of the years 1960 through 1963 nor the amount of taxable income for any year to which such losses could be carried. *406 This was so because the only evidence offered by petitioners to sustain their claim was their own income tax returns for their taxable years 1959 through 1965. We had and still have grave doubt as to these returns' accuracy. We held that these returns were insufficient to sustain petitioners' burden of proof on this issue. (2) We doubted: [Whether] there exists any net operating losses for petitioners to demonstrate. Their alleged losses are predicated upon the $528,664.19 of expenditures incurred to develop Gold Mine. However, we have held many of these expenditures to be nondeductible and as such they cannot enter into the computation of a net-operating loss. Section 172(c). (T.C. Memo. 1976-46 at 29.) (3) Finally we held that petitioner's losses, it any, were not incurred in a trade or business and were, therefore, subject to the limitations of section 172(d)(4). The Fourth Circuit remanded this case because it did not agree with our third reason for disallowing net operating loss deductions to petitioners.Our first two reasons remain unaffected by the Circuit Court's opinion. If anything, our first two reasons were strengthened inasmuch as the Fourth Circuit agreed *407 with our conclusion that part of the expenditures incurred to develop Gold Mine were capital in nature. On motion and at the hearing herein petitioners once again pressed for the same net operating loss carryover deductions we disallowed originally. At the hearing herein petitioners indicated that they still could produce no evidence other than the returns we have already seen and rejected. Petitioners have still failed to carry their burden on this point. We hold for respondent. We note in passing that the Fourth Circuit agreed with our holding that the $150,000 refinancing fee paid by petitioners when they refinanced their Gold Mine indebtedness was amortizable over the life of the loan refinanced. The note thereon was due January 18, 1963, one year after execution. It was extended to May 18, 1963. Thus the refinancing fee must be amortized on the basis of the number of days between January 18, 1962 and January 18, 1963. Any amount remaining for amortzation after 1962 must be amortized over the number of days between January 1, 1963 and May 18, 1963. Therefore it is ORDERED that respondent's Motions for Leave to File Amendment to Answer are granted. It is further
*408 ORDERED that petitioners' motions to adopt computation, filed January 10, 1979 are denied. It is further ORDERED that decisions will be entered in accordance with the computations shown in Appendixes A-1 and B-1 of Respondent's Memorandum on Remand with Computations.