EDISON SECURITIES CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 52662.   Promulgated December 5, 1933.

*J. Marvin Haynes, Esq., C. J. McGuire, Esq.,* and *James O. Wynn, Esq.,* for the petitioner.

*M. B. Leming, Esq.,* and *John R. Gaskins, Esq.,* for the respondent.

484

486

OPINION.

Sternhagen: 1. In our opinion, the distributions of May 12, 1925, and May 27, 1925, made by Stevens & Wood, Inc., of Delaware, were dividends and not distributions in liquidation, both in fact and in the contemplation of the statute. At the time they were declared by the corporation, no dissolution of the corporation or winding up of the business had been decided upon or definitely planned. The mere fact that liquidation had been suggested as one method of resolving the dispute between shareholder interests does not stamp the distribution as one in liquidation. We have found no case to support such a view. The decisions in *Gossett* v. *Commissioner*, 59 Fed. (2d) 365, and *Tootle* v. *Commissioner*, 58 Fed. (2d) 576, relied upon by respondent, disclosed clear evidence that the distributions were made as part of a plan theretofore clearly manifested to wind up and dissolve. Here no such plan took shape until after these distributions of surplus. After the determination to liquidate and dissolve, the distributions of October 1925 and May 1926 were clearly in liquidation; but these are not contested by the petitioner. We think that neither the statement of Clowes nor the ambiguous punctuation in the minutes relating to the Touche, Niven audit points

to liquidation; and if they did, they would be of too little weight to control the determination of the character of the distribution.

2. (a) The petitioner contends that what it received in 1926 because of its ownership of Republic shares was the result of a transaction in a statutory reorganization, and that the recognition of gain is forbidden by section 203 (b) (2), Revenue Act of 1926. The major premise of its argument is that the entire sequence of events constitutes a reorganization, and that its tax is determinable by a comparison of its position at the end with its position at the beginning. In its return and in this proceeding, it has not adhered consistently to this broad concept; but this is not important if the proposition itself is sound.

In our opinion, there is no warrant in the statute for such a wide and formless concept of reorganization. Cf. *Robert D. Green*, 24 B.T.A. 719. In considering the several subdivisions of section 203, from (a) to (g), which lay down the rules for the recognition of gain or loss and its extent, the first inquiry is not whether there has been an intent, purpose, or plan to reorganize, but whether there has been a "reorganization" as defined in subdivision (h). It is only after the situation is found to be a reorganization within subdivision (h), that the preceding subdivisions, withholding the recognition of gain or loss in reorganization transactions, require examination. When this is understood, it becomes plain that the words "plan of reorganization" found in some of the subdivisions preceding (h) are not the dominating words which give character to the situation itself, but are words of limitation upon the recognition of gain or loss. Where the expression "plan of reorganization" appears, its effect is not to broaden the definition of (h), but to confine the nonrecognition of gain or loss to such transactions as are pursuant to the plan as well as part of the consummated statutory reorganization itself, and, in a proper case, by a party to the reorganization. Thus the scheme of the statute preserves the full effect of all its terms and phrases, while otherwise the integrity of the definition in (h) would be lost.

The definition in (h), broad as it is (cf. *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U.S. 462; *Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d) 937; certiorari denied, 288 U.S. 599), is by its terms clearly restricted to actual events and occurrences, and does not embrace mere intents, plans or executory agreements. It is the merger or consolidation, the acquisition, the transfer, and not the plan or agreement, with which the definition deals. This definition, so confined, is hard enough at best to apply, as the numerous decisions and extensive literature on the subject will testify; but the difficulties would be multiplied and unduly try the powers of administration if, by interpretation, the scope of the definition were so broad-

ened as to embrace a mere plan. This involves no question of liberal or strict construction, since every interpretation which is liberal to him who realizes gain is harsh to one who realizes loss. At what stage would a plan come within the statute? If there should be several plans of, say, conflicting interests, which would the statute recognize? In the present case, the original Stevens plan was to be available "to a limited number of stockholders." Although the new corporation was formed in 1925 as a step in the Stevens plan, and in 1925 received a comparatively small part of the Republic shares from Bonbright, the Stevens plan was frustrated, and a substantially different plan was formulated in 1926. Clearly, there was no reorganization in 1925, notwithstanding the existence of a "plan" and its partial realization.

The petitioner contends that the mutual transactions set forth in the Bonbright letter of January 29, 1926, and carried out on February 1, 1926, constituted an exchange in reorganization within subdivision (b)(2). This can not be sustained. At that time there was no reorganization. If it be said that there was a plan, and that the transaction was in pursuance thereof, still there was no statutory reorganization and hence no statutory party to a reorganization the stock or securities of which were transferred or received. The petitioner does not specify which of the parts of the disjunctive definition of (h) is applicable, and we are unable to bring it within (A), (B), (C), or (D). The transaction was between two large shareholders and was, as the Bonbright letter called it, a purchase and sale by each of some of the shares which each owned, with the necessary transfer of cash. The fact that it was preliminary to their mutual promises, looking to a further promotion of a plan to have the Republic shares controlled through the Penn-Ohio corporation, does not give it the character of a reorganization. It was a separate and complete transaction, *E. F. Simms*, 28 B.T.A. 988.

But if it were a reorganization within subdivision (h), and could be regarded as an exchange, the transaction of February 1, 1926, set forth in the Bonbright letter, would not be covered by subdivision (b) (2) and thus free from present tax, but would be within subdivision (d) (1) in case of gain or subdivision (f) in case of loss, for money was received as well as securities. That need not, however, be determined, since the transaction was not an exchange, but a group of sales and purchases, each for a fixed price. Cf. *Sarther Grocery Co.*, 22 B.T.A. 1273. This is what the contracting parties intended, as manifested by their express language, and it is the way they both accounted for the transaction on their books. There is no evidence to the contrary. While the effect may have been similar to that of an outright exchange, the liability is fixed by

the legal character of what was done and not by its practical effect, *United States* v. *Phellis*, 257 U.S. 156; *E. F. Simms*, *supra*. The nature of the transaction as a sale is not affected by a fixed obligation to use the proceeds in an agreed way, *Sarther Grocery Co.* v. *Commissioner*, 63 Fed. (2d) 68; *Clemmons* v. *Commissioner*, 54 Fed. (2d) 209; *Lonsdale* v. *Commissioner*, 32 Fed. (2d) 537; *Detroit Egg Biscuit & Specialty Co.*, 9 B.T.A. 1365, or, *a fortiori*, by the conditional or tentative obligation which petitioner assumed in respect of the joint account and the underwriting of the Penn-Ohio proposed new common.

It is held, therefore, that the petitioner's income for 1926 includes the gain derived from the sale to Bonbright of 5,753 shares of Republic common and 3,840½ shares of Republic preferred.

(b) This must likewise be true as to the transaction in February consisting of the disposition by petitioner of the 5,753 shares of Republic common and the acquisition of 11,506 shares of Penn-Ohio common. It is difficult from the facts available in this record to determine just what happened and when. The Commissioner determined that this was an exchange by the petitioner, and this determination is presumptively correct and must be adopted as the fact unless the evidence is otherwise. We can not say that the evidence overwhelms the presumption, although it leaves the details of this transaction in confusion. It is, however, clear that this transaction must have occurred prior to the plan suggested by the president of the Penn-Ohio corporation on February 4 for securing control of the Republic preferred, without which there could be no voting control. Apparently, as a step in the " endeavors " undertaken in the Bonbright letter, the shares of Republic common which were in the joint account were delivered to Penn-Ohio for double the number of Penn-Ohio common plus bonds at the rate of $25 per share. The Penn-Ohio corporation did this apparently upon the same authority as that upon which in October 1925 it issued its 65,256 shares " and other consideration " for 32,628 shares of Republic common. Thus it stands with no greater significance as a part of a statutory reorganization than did the earlier issue, and not pursuant to an authoritative plan of reorganization but to the same undefinitive plan of two minority, although substantial, shareholders. Unless, therefore, this transaction is to have its statutory character held in suspense until some future events occur to determine whether any statutory reorganization is in process, and then is to be retrospectively recognized as part of such reorganization, there is still no such reorganization, no merger or consolidation, and no acquisition by Penn-Ohio of a majority of the outstanding 113,964 shares of voting stock of Republic.

As above indicated, the statute does not, as a general proposition, require that whenever a reorganization is found to have at some time occurred, all transactions in the shares before and after shall be embraced within the reorganization, so that losses and gains may not be recognized. Such a rule would be impracticable and should not be adopted unless fairly required by the statute. A loose construction of the reorganization provisions would promote confusion rather than certainty, and if uniformly applied, as any rule should be, it would work as harshly in one case as it would liberally in another. The provisions are available to all according to their terms, and if one fails to bring himself within them his tax must be determined by the general method, *Sarther Grocery Co.*, *supra*.

The February transaction, which the respondent has called an exchange, is a fully taxable transaction. Within the limits of the deficiency already determined, since no increase was claimed or pleaded, the determination is sustained.

(c) When the exchange of March 30 occurred, the petitioner giving 6,152½ shares of Republic preferred and $42.13 for 6,153 shares of Penn-Ohio preferred and $212,278.50, this was but a step in the acquisition by Penn-Ohio of voting control of Republic, and this was an exchange by petitioner in pursuance of the very plan for such acquisition and consequent reorganization. While it was not the culminating acquisition which determined the control, it was indubitably a part of the reorganization which at that time was definitively planned and had been approved by the Penn-Ohio shareholders on February 27. Given a clear and authoritative plan by one corporation to acquire stock control of another in an arrangement which partakes of the nature of a merger or consolidation, it is not essential that the acquisition be in a single transaction. While preliminary or casual acquisitions of less than a majority are not within the reorganization, those which are directly related to the process of deliberately acquiring control must be held to be so.

In our opinion, therefore, this transaction would, were it not for the $212,278.50 received in money, have been within section 203 (b) (2), and there was, in accordance with section 203 (d) (1), recognizable gain limited by the $212,278.50.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*