CALIFORNIA BREWING ASSOCIATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ACME BREWERIES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 101295, 101296.   Promulgated February 26, 1941.

*Norman A. Eisner, Esq.,* and *Myrtile Cerf, C. P. A.,* for the petitioners.

*Harry R. Horrow, Esq.,* for the respondent.

722

STERNHAGEN: 1. In the notice of deficiency, which was dated November 3, 1939, determining a deficiency of $3,095.69 for the calendar year 1936, reference is made to earlier reports of examination, a protest and a conference, but there is no intimation of a protest or controversy as to the use of the calendar year as the period under consideration. Adjustments were made in four deductions and a dividends paid credit was disallowed. The petition assails none of the deduction adjustments; it assails the disallowance of the dividends paid credit. It alleges that "the tax in controversy is deficiency in income tax in the amount of $3,095.69 as set forth in the notice of deficiency for the taxable year ended December 31, 1936." It puts in issue the authority of the Commissioner to adopt the calendar year 1936 as the tax year and to determine any deficiency

for the entire year and thus it seeks a decision of no deficiency for want of a valid determination.

The attack upon the deficiency notice as a proper foundation for a deficiency must fail. The taxpayer, it is true, liquidated and dissolved on March 31, 1936, and had it chosen to act upon that fact as a basis for a final income tax period and return, it might have had the right to do so, cf. *Elgin Compress Co.*, 31 B. T. A. 273; *Pittsburgh & West Virginia Railway Co.*, 32 B. T. A. 66. That would have required the taxpayer to file a return for that period within three months thereafter, or before July 1, 1936. Had the taxpayer filed such a return, it might have been entitled to have its tax liability or any deficiency determined for the short period. But it did not do so, and there is nothing in the statute requiring the taxpayer in such circumstances to treat the short final period as its taxable period and to file a short period return. Nothing requires the Commissioner to recognize a short closing taxable period before he has knowledge of dissolution, cf. *Mrs. Grant Smith*, 26 B. T. A. 1178; and in this case the earliest date when the Commissioner had such knowledge was when the complete return was filed on April 15, 1937. This return was ambiguous; its heading showed it to be "For CALENDAR YEAR 1936 or FISCAL YEAR begun January 1, 1936, and ended March 31, 1936." Upon the basis of such return the Commissioner carried on the audits, and in 1938, after a revenue agent had prepared an additional tax for the short period of 1936, the taxpayer paid the additional amount and reserved its right to claim refund or otherwise proceed "for the year 1936." Cf. *Commissioner* v. *Forest Glen Creamery Co.*, 98 Fed. (2d) 968.

Under such circumstances it is now too late for the taxpayer to stand upon a short period as the necessary basis of its tax and resist the assessment of a correct deficiency because the adjustments were stated in a notice covering the entire year, which it had itself treated as its tax period. However troublesome may be the scope of the doctrine of estoppel, there should be no doubt of its applicability here to hold the taxpayer to the taxable period which it has so clearly led the Commissioner to recognize. To permit the taxpayer to escape the correct deficiency would be offensive to the practice of voluntary returns upon which the income tax system is founded. The Commissioner's use of the calendar year 1936 is sustained.

2. The petitioner contends that assessment is barred by the statute of limitations, Revenue Act of 1936, section 275. There is no express or direct written request by the petitioner or in its behalf for prompt assessment. The statement on the face of the return that the corporation was dissolved March 31, 1936, clearly was not a request for assessment, and there is no reason to construe it as such. The Acme Breweries, called the "parent company", was stated in the return to

have taken over all petitioner's assets in complete liquidation, and in this proceeding the Acme Breweries concedes its liability for petitioner's deficiency. Nothing, therefore, supports an inference that early assessment was important or desirable, for whenever in ordinary course a deficiency assessment should occur, its payment by the Acme Breweries was apparently provided for.

The deficiency determination was timely, and the petitioner's attack on this ground must fail, *Esperson* v. *Commissioner*, 49 Fed. (2d) 259; certiorari denied, 284 U. S. 658; *Mary Lee Winger, Executrix*, 30 B. T. A. 357; dismissed, 79 Fed. (2d) 1022; cf. *Maffit* v. *Becker*, 65 Fed. (2d) 880; *White* v. *United States*, 22 Fed. Supp. 821; *Beverly Wall Paper Co.* v. *Commissioner*, 98 Fed. (2d) 211.

3. The petitioner claims a dividends paid credit under section 27 (f) of the Revenue Act of 1936. It will result in wiping out the surtax on undistributed profits determined by the Commissioner. The reason for the disallowance stated in the deficiency notice was that the liquidation distribution was not a dividend taxable to the recipient. This reason has since been carefully considered in *Credit Alliance Corporation*, 42 B. T. A. 1020 (on review C. C. A., 4th Cir.), and has been held inadequate to support the disallowance. The dividends paid credit was held to rest on section 27 (f) and was sustained. The respondent here recognizes the force of the decision as a matter of law, but turns to the evidence in this record, which, it is said, does not prove what part, if any, of the liquidation distribution is properly chargeable to earnings and profits accumulated after February 28, 1913, and what part is chargeable to capital account.

The evidence is meager. The petitioner's tax return shows a balance sheet at the beginning and end of the taxable year 1936; on it is an item (20) called surplus, which is $49,526.59 at the beginning and $63,555.06 at the end of the year; the next item (21), called undivided profits, shows the same figures in the extended, or total, column. On the face of the return, the net income is shown as $16,876.55. The answer admits that on March 31, 1936, the earnings and profits were distributed in complete liquidation, and that since then petitioner has had no assets whatever. It is difficult to understand why this evidence is not adequate to prove petitioner's point. The corporation was not organized until after February 28, 1913, so the date is without significance—all earnings and profits were accumulated after February 28, 1913. It is not proved what the figures of surplus and undivided profits embrace, and if the deficiency notice or the answer had suggested that they included, say, paid in surplus or a valuation write-up, there would be reason to hold petitioner to a breakdown or analysis of the figure. But the controversy was as to the applicable statute, and in that posture of

the case it may fairly be inferred that the balance sheet figures of surplus or undivided profits represent earned surplus and realized profits or, as the statute calls them, earnings and profits.

The Commissioner was in error in disallowing the dividends paid credit, and the determination on this point is reversed, *Credit Alliance Corporation, supra.*

4. The petitioner complains of a ruling at the opening of the trial denying its motion for leave to amend its petition, and the exclusion of proper evidence to support the allegations of the proposed amended petition. The respondent objected and the motion was denied.

The proposed amendment contained a new assignment of error assailing the failure of the respondent to allow a deduction for California franchise tax, most of which is alleged to have been paid May 20, 1940. The deficiency notice was mailed to the taxpayer on November 3, 1939, which was before the alleged last payment of franchise tax on May 20, 1940. The petition was filed January 26, 1940, and contained no assignment of error or allegation of fact relating to California franchise tax. The answer was filed March 12, 1940, and was likewise silent on the subject. Notice of hearing was sent to petitioner August 13, 1940, showing that the proceeding was on a circuit calendar set for hearing at San Francisco, California, beginning October 7, 1940. Not until October 8, 1940, after the session in San Francisco had begun, was the motion for leave to amend filed with the clerk and served. The motion was presented when the case was called for trial on October 11, and respondent objected on the ground that the proposed amendment raised an entirely new issue the subject of which had not theretofore been presented to the Bureau of Internal Revenue, and that he was wholly unprepared to make a proper defense.

The petitioner's argument has been renewed in its brief, and after full consideration the denial of the motion must be reaffirmed. Although such rulings are matters within the discretion of the Board, this discretion may never be arbitrary and must be controlled by sound reason and fairness. Neither side may take undue advantage of the other, whether purposely or not. The discretion of the Board may not be exercised to permit one party to proceed unless the other has been given a fair opportunity to meet the issue. No reason is shown why the petitioner did not move soon after the payment in May to amend its petition. So far as appears, this could have been done before the case was set for hearing. Even if the proposed amendment had been tendered after the notice of hearing, it might have met with no objection or with an unfounded objection if the respondent had been afforded ample time in the circumstances to investigate and consider the new issue proposed. But no such opportunity was afforded. The session of the Board in San Francisco

began October 7, 1940, the calendar carrying some eighty odd cases. It was entirely unreasonable, therefore, that petitioner, having known the facts more than four months, should, on the day of trial, after three days' notice, present an issue requiring an entirely new investigation and consideration.

There are occasions when amendments of the pleadings may be permitted if, without inconvenience, the trial can proceed without undue delay and without actual unfairness. Here, however, a postponement of the trial to enable the respondent to meet the issue would have required that the case be taken from the calendar of the session and postponed to a later session in San Francisco. Such a substantial delay is a factor necessarily affecting the discretion of the Board. Such considerations are substantially different from those involved in local practice. The ordinary requirement of diligence has greater force in practice before the Board, when more than 90 percent of its cases are heard on its circuit calendar with the attendant difficulties of distance and delay.

It results that the deficiency must be recomputed by restoring the dividends paid credit and adhering to the other adjustments made in the Commissioner's determination.

*Decision will be entered under Rule 50.*