Robert A. HENNINGSEN, Petitioner
and Cross Respondent,
and
R. A. and Margaret Henningsen,
Petitioner,
v.
COMMISSIONER OF INTERNAL REV-
ENUE, Respondent and Cross-
Petitioner.

No. 7327.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 15, 1957.

Decided April 27, 1957.

Charles P. Duffy, Portland, Or. (Carl E. Davidson, Portland, Or., on brief), for petitioners and cross-respondent.

Louise Foster, Atty. Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and I. Henry Kutz, Dept. of Justice, Washington, D. C., on brief) for respondent and cross-petitioner.

Before PARKER, Chief Judge, SOPER, Circuit Judge, and WILLIAMS, District Judge.

SOPER, Circuit Judge.

This case requires a review of a decision of the Tax Court which sustained determinations by the Commissioner of Internal Revenue of a deficiency in income tax of Robert A. Henningsen for the year 1946 and a deficiency in income tax of Robert A. Henningsen and Margaret Henningsen, his wife, for the year 1947. The question in dispute was whether the taxpayers were residents of China or the United States in the taxable years.

Originally the Commissioner determined a deficiency for the year 1946 in the sum of $73,677.25 and also an addition to the tax for failure of the taxpayer to file a return for that year. The Commissioner also determined a deficiency in income tax of husband and wife for the year 1947 in the sum of $18,694.44. During the taxable years the taxpayer was an employee of the Henningsen Produce Company, a China Trade Act corporation, and received from it certain bonus payments. One of these was in the amount of $100,000 which was included by the Commissioner in the taxpayer's income for the year 1946. During the hearing before the Tax Court the evidence indicated that this sum was received in 1947 rather than in 1946 and the taxpayer was allowed to amend his petition in the 1946 case so as to challenge the Commissioner's determination on this point. The Commissioner was also allowed to amend his answer in this case. About a month later the Commissioner filed an amended answer in the 1946 case denying that the bonus was received in 1947 —and also filed an amended answer in the 1947 case in which he set up the claim that if the bonus was in fact received by the taxpayer in 1947, the deficiency in that year would be $96,423.-44 in lieu of $18,694.44 as previously determined. The Tax Court held that the money was received in 1947 and also held that the Commissioner's claim for an increased deficiency in the latter year was timely and proper. The Tax Court's final decision was that the taxpayer owed a deficiency for 1946 in the amount of $3049.50 and a penalty in the sum of $762.38 under § 291(a) of the 1939 Code, 26 U.S.C.A. § 291(a), and that

Robert A. and Margaret Henningsen owed a deficiency in income tax for 1947 in the sum of $96,423.44. The Commissioner filed a cross-petition in this court claiming that the bonus of $100,000 should be included in the taxpayer's income for the year 1946 and not for the year 1947.

Section 116(a) (1) of the Internal Revenue Code 1939, 26 U.S.C.A. § 116 (a) (1), exempts from taxation amounts received from sources without the United States in the case of an individual citizen of the United States who establishes to the satisfaction of the Commissioner that he is a bona fide resident of a foreign country during the entire taxable year. Section 116(a) (2) provides that, in case of an individual citizen of the United States who has been a bona fide resident of a foreign country for at least two years before the date on which he changes his residence to the United States, earned income received from sources without the United States attributable to the period of foreign residence shall be exempt from taxation.

The most important factual question is whether Henningsen, a citizen of the United States, was a bona fide resident of China or of the United States during the taxable years.[1] Evidence bearing on this matter may be summarized as follows:

The taxpayer was born in the United States in 1905. In October 1929, when he was a resident of Portland, Oregon, he left the United States with his wife and baby to accept full-time employment in Shanghai, China, with the Henningsen Produce Company, a China Trade Act, 15 U.S.C.A. § 141 et seq., corporation previously organized by members of his family. He became a bona fide resident of China and remained there, except for vacation trips to the United States, until November 1941.

In July 1940, pursuant to warnings as to the war situation, his wife and three children came to the United States where they remained until January 1947. The taxpayer himself came to the United States in August 1940. The family took up its residence in Portland, Oregon, in a house purchased by the taxpayer in 1936 and thereafter occupied by his wife's parents. In 1940, the taxpayer sold this property and bought another residence in a suburb of Portland in which he lived with his family until 1944.

In the meantime, in August 1940, it was agreed between U. S. Harkson, the brother-in-law of the taxpayer, who was the president of the Produce Company, the taxpayer's brother Anker, who was vice-president and manager of the company, and the taxpayer, who was secretary, treasurer and assistant manager, that in view of the war situation in China only one of them should remain in Shanghai as manager of the company's operations and that they should rotate as manager until the situation cleared up, and that the taxpayer should take the first tour of duty. Accordingly he returned to Shanghai the latter part of 1940 and remained there until November 1941 when his brother replaced him and he returned to his family in the United States.

In April 1942, he went to Brazil and put a dried egg factory into operation for a corporation which the Produce Company controlled. He remained in Brazil until November 1942 when he returned to Oregon where his family had remained in the meantime.

From February 1943 until February 1944 the taxpayer served with the Office of Strategic Services, first in Washington, D. C. and later in San Francisco. During this period his wife and children remained in the residence in Portland.

From March 1944 until June 1945 the taxpayer resided in Lamesa, Texas, where he managed a dried egg factory. During a portion of this period his wife and children were with him. After his

---

1. The income involved in this case was earned entirely by Mr. Henningsen, and although he made a joint return with his wife in 1947, he will be referred to generally as the taxpayer.

return to Portland he purchased another residence property in that city, which he subsequently sold in December 1946.

From August 1945, after the termination of the war, the taxpayer lived in San Francisco in order to make arrangements for the company's return to Shanghai. He worked at this location until February 1946, when he left Los Angeles for Shanghai and upon arrival took up his duties with the Produce Company. His family, in the meantime, remained in the Portland residence until August 1946, when they moved to another residence in Gearhart, Oregon, purchased by the taxpayer. In January 1947, the wife and children left the United States for Shanghai, where they lived with the taxpayer in an apartment until July 1947. In August 1947, Harkson purchased the stock of the taxpayer and his brother in the Produce Company and thereupon they terminated their employment with the company. The taxpayer made a profit upon the sale of $21,457, which was reported on the joint return of the taxpayer and his wife for the year 1947.

During the calendar years 1946 and 1947 the taxpayer received a total of $152,500 for services rendered the Produce Company, consisting of salaries in the amount of $30,000 and bonus payments of $122,500. One of the bonus payments amounting to $100,000 was transferred by telegraph on January 15, 1947 to the National City Bank of New York to be credited to the taxpayer's account in the U. S. National Bank of Portland. The Produce Company deducted this payment on its 1946 income tax return. Shortly after the taxpayer and his brother sold their stock in the Produce Company they acquired the franchise to distribute Coca-Cola in Hongkong and formed a corporation under the China Trade Act for this purpose. It was agreed that the brother should manage the Coca-Cola business until it required the services of both of them and that the taxpayer would return to the United States until that time arrived. Accordingly, the taxpayer left Shanghai in November 1947 and arrived in the United States on December 6, 1947. After this date he and his family resided in the Gearhart residence until 1954, when they moved to Portland where they now reside. In 1950, the taxpayer and other persons established an outdoor moving picture theatre at Gearhart. He sold his interest in this business in August 1953 and the next year established a restaurant business in Portland, which he still operates.

Upon these facts the Tax Court found that the taxpayer abandoned his China residence when he came back to the United States in 1941 or shortly thereafter; and that he was not a bona fide resident of China for the entire year either in 1946 or 1947; and that he was not a bona fide resident of China for a period of at least two years before the date in 1947 when he reestablished his residence in the United States.

We are in accord with the Tax Court's conclusion that the taxpayer was not a bona fide resident of China during the entire year 1946 and, consequently, is not entitled to an exemption for the amounts received from the company in China during that year. It is provided by § 29.116–1 of Treasury Regulations 111, promulgated under the Internal Revenue Code, 1939, as amended by T.D. 5373, 1944 Cum.Bull. 143, that whether the individual citizen of the United States is a bona fide resident of a foreign country shall be determined in general by the application of the principles of §§ 29.211–2 to 29.211–5. It is provided by § 29.211–2 that one who comes to the United States for a purpose of such a nature that an extended stay may be necessary for its accomplishment, and to that end makes his home temporarily in the United States, becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated. We had occasion to consider this regulation in a number of previous decisions, see Marsman v. Commissioner of Internal Revenue, 4 Cir., 205 F.2d 335, 338; Commissioner of Internal Revenue v. Nubar, 4 Cir., 185 F.2d 584, 586;

Commissioner of Internal Revenue v. Patino, 4 Cir., 186 F.2d 962, 965; Myers v. Commissioner of Internal Revenue, 4 Cir., 180 F.2d 969, 971;[2] and we reached the conclusion that the regulation fairly interprets the purpose of § 116 of the statute and should be given effect. The evidence strongly supports the conclusion of the Tax Court that when Henningsen came back to the United States in November 1941, after he had served his tour of duty in China in pursuance of his agreement with his associates, it was his intention to take up his residence in the United States at least until his tour of duty should come again at the end of two years; and that after the war between the United States and Japan broke out in December 1941, he had at the most only a mere floating intention, indefinite as to time, to return to China when the war should be brought to a successful conclusion by the United States. Obviously he intended in the meantime to reside in the United States and actually did so until February 2, 1946, when it finally became safe for him to leave Los Angeles for Shanghai. During 1946 he was a resident of China only from February to the end of the year, while January 1946 was the last month of a residence of more than four years in the United States.

■ We are also of the opinion that the taxpayer is not entitled to an exemption under § 116(a) (1) on the income earned in China in 1947. The taxpayer contends that although he was not present in China after November 1947, his employment with the Produce Company should be treated as covering the entire year of 1947, and also that he did not give up his residence in China on returning to the United States in November of that year because it was his intention to return to Hongkong to take up the Coca-Cola business at some time in the future. The evidence does not support these contentions. The record clearly shows that the taxpayer sold out his interest in the Produce Company and severed his connection with it before he left China prior to the end of the year. It is not as if he had left China for a temporary absence on vacation in the United States but, rather, that he had abandoned the business altogether.

Nor can it be said that he had a firm intention to return to China in connection with the business at Hongkong so that his subsequent presence in the United States should not be viewed as residence in this country. According to the uncontradicted evidence he was not to return to China until and unless the exigencies of the business required it; and when he returned to the United State he and his family reestablished the family home at Gearhart and remained there until 1954, when they moved to Portland where they now reside. In the meantime, he established a business in Gearhart in 1950, sold it out in 1953 and in the following year established another business, which he still operates. Applying the principles laid down in the regulations it must be held that the taxpayer was not a resident of China but a resident of the United States during the latter part of 1947.

■ The provisions of § 116(a) (2) of the statute are of no aid to the taxpayer since it is clear, from what has been said, that he was not a bona fide resident of China for at least two years before he left that country in November 1947 and came to the United States.

■ There is no dispute as to the failure of the taxpayer to file the required income tax return for the year 1946 on account of which the Tax Court held that he was subject to the penalty imposed by § 291 of the Statute in the absence of a showing that such failure was due to reasonable cause and was not due to wilful neglect. Since the taxpayer was not a resident of China during the entire year the filing of the return was required by the statute. He claims that he sincerely believed that he was not obliged to file a return and this may well have been the fact; but

2. See also Seeley v. Commissioner of Internal Revenue, 2 Cir., 186 F.2d 541.

there is no uncertainty as to the settled rule that uninformed and unsupported belief or an innocent mistake does not of itself constitute reasonable cause. The Tax Court found that there was no showing that the taxpayer sought or relied upon the advice of counsel, and accordingly sustained the imposition of the penalty. We cannot say this decision was erroneous. See Sabatini v. Commissioner of Internal Revenue, 2 Cir., 98 F.2d 753; P. Dougherty Co. v. Commissioner of Internal Revenue, 4 Cir., 159 F.2d 269.

We come to the final contention of the taxpayer that the Commissioner failed to claim the increased deficiency for the year 1947 at or before the time of the hearing in the Tax Court within the meaning of § 272(e) of the Internal Revenue Code 1939, 26 U.S.C.A. § 272 (e). This section gives the Tax Court jurisdiction to redetermine the correct amount of a deficiency even if it is greater than the amount of the deficiency of which the taxpayer had been notified by the Commissioner, provided the claim therefor is asserted by the Commissioner at or before the hearing or a rehearing. Counsel for the taxpayer, in his opening statement at the hearing before the Tax Court, declared that the evidence to be taken would show that the taxpayer received the bonus of $100,000 in the year 1947 and not in the year 1946 as asserted in the deficiency notice for that year; and counsel for the government, in his opening statement, gave notice that if the evidence should sustain the taxpayer's contention, the government would ask leave to amend so as to conform its pleadings to the proof. The evidence taken, as the Tax Court found, did sustain the taxpayer's contention on this point and at the conclusion of the testimony both parties asked and were granted leave to amend their pleadings so as to cover the situation. At the same time the Court allowed counsel 60 days for filing original briefs and 30 days for a reply. The amended petition as to 1946 was filed within 7 days and the amended answers as to both years within 35 days after the testimony was closed. Under these circumstances the decision of the Tax Court that the Commissioner had made a timely claim for the increased deficiency in 1947 was correct. We have held that there is no reason why the word "hearing" should not be given a significance broad enough to include the whole proceeding down to the final decision, since the purpose of the statute is to give the taxpayer an opportunity to answer and resist the claim before it is made effective by action of the court; and that if this is done a claim of increase is made in time whether it is presented during the taking of the evidence or in the period allowed for argument or briefs, or even subsequently during the hearing under Rule 50, Tax Court Rules, 26 U.S.C.A. (I.R.C.1954) § 7453; in short, at any time before the decision and judgment of the court have been entered. See Helvering v. Edison Securities Corp., 4 Cir., 78 F.2d 85, 90–91; Commissioner of Internal Revenue v. Ray, 7 Cir., 88 F.2d 891; International Banding Mach. Co. v. Commissioner of Internal Revenue, 2 Cir., 37 F.2d 660; cf. Moise v. Burnet, 9 Cir., 52 F.2d 1071.

It is manifest in the pending case that the taxpayer had full opportunity to meet the claim of an increased deficiency for the year 1947 since he himself introduced the evidence which showed that the bonus had been received in that year, whereupon the claim for increased deficiency by the Commissioner followed as a matter of course.

Affirmed.