WILLIAM J. LAW AND HELEN M. LAW, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 17315–82, 10054–83.     Filed May 23, 1985.

*Rex A. Guest,* for the petitioners.
*David D. Baier,* for the respondent.

---

OPINION

SIMPSON, *Judge*: On March 28, 1985, the Commissioner filed a "Motion for Leave to File Second Amendment to Answer," pursuant to Rule 41(a) of the Tax Court Rules of Practice and Procedure.[1] He seeks leave to amend his answer to assert the applicability of section 6621(d), I.R.C. 1954,[2] as added by section 144 of the Tax Reform Act of 1984, Pub. L. 98–369, 98 Stat. 682, which increased the rate of interest on substantial underpayments attributable to certain tax motivated transactions. The petitioners, William J. and Helen M. Law, have filed a "Notice of Objection" to the Commissioner's motion.

The trial of this case was held on July 9 through July 12, 1984, and involved deficiencies determined to be owing by the petitioners for 1978 and 1979. The Commissioner filed the opening brief (because he bears the burden of proof on several issues) on October 10, 1984, and the petitioners filed their brief in answer on March 18, 1985. The Commissioner has not yet filed his reply brief.

Mr. Law became a partner in 1978 of an Illinois limited partnership (the partnership) organized to acquire and to distribute a motion picture film (the film). On their joint Federal income tax returns for 1978 and 1979, the petitioners claimed a distributive share of the partnership's net loss for those years. In the notice of deficiency and by a prior amendment to his answer, the Commissioner has disallowed all of the claimed distributive shares of the losses on numerous and alternative grounds, including: (1) The partnership is not entitled to the film depreciation deductions claimed on its partnership returns because it did not acquire a depreciable interest in the film; (2) if the partnership acquired a depreciable interest in the film, it is entitled to depreciation deductions smaller than those claimed because a nonrecourse debt included in the film's depreciable basis was too contingent to be a genuine indebtedness, because the face amount of the nonrecourse debt exceeded the fair market value of the interest acquired in the film, and because the partnership was required to use the income forecast rather than the double-declining

---

[1] Any reference to a Rule is to the Tax Court Rules of Practice and Procedure.

[2] Any statutory reference is to the Internal Revenue Code of 1954 as in effect during the years in issue, unless otherwise indicated.

balance method of depreciation; (3) the partnership's activities were not "engaged in for profit" within the meaning of section 183; and (4) the amount of Mr. Law's deductible share of the partnership losses is limited by section 465(a) to the amount for which he was "at risk."

Section 6621(d) provides for an increase in the interest rate due on underpayments where there is a "substantial underpayment" (an underpayment exceeding $1,000) in any taxable year "attributable to 1 or more tax motivated transactions." Sec. 6621(d)(1) and (2). A "tax motivated transaction" is defined as:

(i) any valuation overstatement (within the meaning of section 6659(c)),
(ii) any loss disallowed by reason of section 465(a) and any credit disallowed under section 46(c)(8),
(iii) any straddle (as defined in section 1092(c) without regard to subsections (d) and (e) of section 1092), and
(iv) any use of an accounting method specified in regulations prescribed by the Secretary as a use which may result in a substantial distortion of income for any period.
[Sec. 6621(d)(3)(A)]

In addition, section 6621(d)(3)(B) provides that "The Secretary may by regulations specify other types of transactions which will be treated as tax motivated * * * and may by regulations provide that specified transactions being treated as tax motivated will no longer be so treated."

The Secretary has promulgated temporary regulations under the regulatory authority granted in subparagraphs (A)(iv) and (B). Sec. 301.6621–2T, Proced. & Admin. Regs. (Temporary). The temporary regulations list several circumstances (not relevant to the case before us) in which the disallowance of a deduction or credit shall be treated as attributable to the use of an accounting method that may result in a substantial distortion of income and, thus, shall be a tax motivated transaction.[3] The regulations also specify, pursuant to section

[3] Q–3 and A–3 of sec. 301.6621–2T, Proced. & Admin. Regs. (Temporary), 49 Fed. Reg. 50391–50394 (Dec. 28, 1984), provide that a deduction or credit disallowed, or income included, in any of the following circumstances shall be treated as attributable to the use of an accounting method that may result in a substantial distortion of income:

(1) Any deduction disallowed for any period by reason of section 464 or section 278(b), relating to certain expenses of farming syndicates;

(2) In the case of a taxpayer who computes taxable income using the cash receipts and disbursements method of accounting, any interest deduction disallowed for any period by reason of

6621(d)(3)(B), two additional types of transactions which will be treated as tax motivated transactions: first, "Any deduction disallowed for any period under section 183, relating to an activity engaged in by an individual or an S corporation that is not engaged in for profit," and second, "Any deduction disallowed for any period under section 165(c)(2), relating to any transaction not entered into for profit." Sec. 301.6621–2T, Q–4 and A–4, Proced. & Admin. Regs. (Temporary), 49 Fed. Reg. 50391–50394 (Dec. 28, 1984). Both section 6621(d) and the temporary regulations apply to interest accruing after December 31, 1984, on a substantial underpayment attributable to tax motivated transactions, regardless of the date prescribed for payment of the tax. Sec. 301.6621–2T, Q–10 and A–10, Proced. & Admin. Regs. (Temporary). The Tax Court has jurisdiction to determine the portion (if any) of a deficiency which is a substantial underpayment attributable to tax motivated transactions. Sec. 6621(d)(4).

In his motion to amend his answer, the Commissioner seeks to invoke the applicability of section 6621(d) on the grounds that the petitioners are liable for substantial underpayments in 1978 and 1979 attributable to a "valuation overstatement"

---

section 461(g), relating to prepaid interest, provided the interest is not paid with respect to indebtedness incurred in connection with (i) the purchase, refinancing, or improvement of the principal residence of the taxpayer, or (ii) the purchase of consumer goods by the taxpayer;

(3) Any interest deduction disallowed for any period because the amount of the claimed deduction was computed using a method resulting in an amount of interest for a period that exceeds the true cost of the indebtedness for the period computed by applying the effective rate of interest on the loan to the unpaid balance of the loan for that period (i.e., the economic accrual of interest for the period), provided the interest is not accrued with respect to indebtedness incurred in connection with (i) the purchase, refinancing, or improvement of the principal residence of the taxpayer, or (ii) the purchase of consumer goods by the taxpayer (see Rev. Rul. 83–84, 1983–1 C.B. 97, and sections 163(e), 446(b), and 483);

(4) Any deduction disallowed for any period under section 709, relating to organization or syndication expenditures of a partnership;

(5) In the case of any expenditure described in section 248(b) that was incurred by an S corporation, any deduction disallowed because it exceeds the amount allowable under section 248, relating to organizational expenditures;

(6) Any deduction disallowed for any period under section 267(a), relating to transactions between related taxpayers;

(7) Any deduction disallowed for any period, or any income required to be included for any period, under section 467, relating to certain payments for the use of property or services;

(8) Any deduction disallowed for any period under section 461(i), relating to certain deductions of tax shelters; and

(9) In the case of a taxpayer who computes taxable income using the cash receipts and disbursements method of accounting, any deduction disallowed for any period because (i) the expenditure resulting in the deduction was a deposit rather than a payment, (ii) the expenditure was prepaid for tax avoidance purposes and not for a business purpose, or (iii) the deduction resulted in a material distortion of income (see, e.g., Rev. Rul. 79–229, 1979–2 C.B. 210).

(within the meaning of section 6659(c)[4]) and to losses which are disallowed by reason of section 465(a).[5] Specifically, he contends that the partnership's losses resulted, for the most part, from excessive deductions for depreciation of the film caused by an overvaluation of the partnership's interest (if any) in the film. He also maintains that, if it is determined that the petitioners incurred deductible losses in 1978 and 1979 with respect to their investment in the partnership, the deductible portions of such losses are limited to the amount the petitioners were "at risk."[6] The petitioners object to the Commissioner's proposed amendment as being unfairly prejudicial to them, because it would necessitate further trial and briefing.

Under section 6214(a), this Court has jurisdiction to consider a claim by the Commissioner for an increased deficiency or addition to tax at any time before the entry of a final decision. *Ferrill v. Commissioner*, 684 F.2d 261, 265 (3d Cir. 1982), affg. per curiam a Memorandum Opinion of this Court; *Henningsen v. Commissioner*, 243 F.2d 954 (4th Cir. 1957), affg. 26 T.C. 528 (1956)[7]; see *Koufman v. Commissioner*, 69 T.C. 473 (1977). However, section 6214(a) does not give the Commissioner an unqualified right to amend his answer to claim an increased deficiency, addition to tax, or penalty. *Commissioner v. Long's Estate*, 304 F.2d 136 (9th Cir. 1962), affg. unreported orders of

---

[4]Sec. 6659(c), as amended by the Tax Reform Act of 1984, Pub. L. 98–369, 98 Stat. 682, defines a "valuation overstatement":

SEC. 6659(c). VALUATION OVERSTATEMENT DEFINED.—For purposes of this section, there is a valuation overstatement if the value of any property, or the adjusted basis of any property, claimed on any return is 150 percent or more of the amount determined to be the correct amount of such valuation or adjusted basis (as the case may be).

[5]Sec. 465(a) provides, in part, as follows:

SEC. 465(a). LIMITATION TO AMOUNT AT RISK.—
   (1) IN GENERAL.—In the case of—
   (A) an individual, * * *

    *      *      *      *      *      *      *

engaged in an activity to which this section applies, any loss from such activity for the taxable year shall be allowed only to the extent of the aggregate amount with respect to which the taxpayer is at risk (within the meaning of subsection (b)) for such activity at the close of the taxable year.

[6]Although the Commissioner also has disallowed the petitioners' claimed losses on the ground that the partnership was not an activity engaged in for profit, he does not rely on sec. 301.6621–2T, Q–4 and A–4, Proced. & Admin. Regs. (Temporary), wherein the list of "tax motivated transactions" is expanded to include "Any deduction disallowed for any period under section 183, relating to an activity engaged in by an individual or an S corporation that is not engaged in for profit." See note 3 *supra*.

[7]*Chanik v. Commissioner*, T. C. Memo. 1972–174, affd. per curiam 492 F.2d 1182 (6th Cir. 1974).

this Court; *Commissioner v. Erie Forge Co.*, 167 F.2d 71 (3d Cir. 1948), affg. a Memorandum Opinion of this Court; *Koufman v. Commissioner, supra.* Section 7453 expressly authorizes this Court to adopt rules governing practice before it, and the Commissioner, like any other party before this Court, is required to conform to such rules. *Commissioner v. Long's Estate, supra; Commissioner v. Erie Forge Co., supra; Koufman v. Commissioner, supra.* Under Rule 41(a), pleadings may be amended after the case has been placed on a trial calendar and over the objection of the opposing party only by leave of the Court "when justice so requires." Whether a motion seeking amendment should be allowed is within the sound discretion of the Court, and its decision will not be reversed unless it abuses its discretion. *Commissioner v. Long's Estate, supra; Commissioner v. Erie Forge Co., supra.*

In determining the justice of a proposed amendment, we must examine the particular circumstances in the case before us, for the exercise of discretion "may never be arbitrary and must be controlled by sound reason and fairness." *California Brewing Association v. Commissioner*, 43 B.T.A. 721, 725 (1941). If there is evidence of surprise or substantial disadvantage to the petitioner, the Commissioner's motion to amend should be denied because the purpose of section 6214(a) is to give the petitioner a fair opportunity to answer and resist the claim before it is considered by the Court. *Ferrill v. Commissioner, supra* at 265; *Henningsen v. Commissioner, supra* at 959; *Helvering v. Edison Securities Corp.*, 78 F.2d 85, 91 (4th Cir. 1935), affg. in part and remanding 29 B.T.A. 483 (1933). On the other hand, in cases where there was no evidence of surprise or prejudice to the petitioner, this Court has been reversed for refusing to allow the Commissioner to amend his answer to claim an increased deficiency, even after the Court has filed its opinion. *Commissioner v. Ray*, 88 F.2d 891 (7th Cir. 1937), revg. a Memorandum Opinion of this Court; see *Buffalo Union Furnace Co. v. Helvering*, 72 F.2d 399 (2d Cir. 1934), revg. on this issue 23 B.T.A. 439 (1931).

In the present case, while we are not convinced that the proposed amendment would require a further trial, we are of the opinion that it presents new legal issues of which the petitioners were without notice when they submitted their brief in answer. The petitioners would be severely prejudiced if

we were to permit the Commissioner to raise this new issue so late in the proceedings.

Section 6621(d) was enacted on July 18, 1984, after the trial of this case. In connection with the enactment of such provision, the Conference observed:

> The conferees believe that, with this amendment, the Congress has given the Tax Court sufficient tools to manage its docket, and that the responsibility for effectively managing that docket and reducing the backlog now lies with the Tax Court. * * * [H. Rept. 98–861 (Conf.) (1984), 1984–3 C.B. (Vol. 2) 1, 239.]

Thus, Congress apparently contemplated that broad use would be made of the authority to impose additional interest on underpayments of tax attributable to tax motivated transactions.

On January 10, 1985, Chief Judge Howard A. Dawson, Jr., announced, on behalf of the Tax Court:

> certain procedures that will be followed by the Court when the Commissioner of Internal Revenue claims additional interest under section 6621(d) of the Internal Revenue Code of 1954.

> \*     \*     \*     \*     \*     \*     \*

> It is estimated that there are about 22,000 cases now pending in the Tax Court which involve alleged tax shelters. If the Commissioner moved for leave to amend his answers in those cases to claim the additional interest under section 6621(d), the processing of all such motions would present the Court with a staggering problem. To avoid the Commissioner filing written motions in all such cases, the Court has decided to adopt the following procedures in cases now pending before the Court to be tried or to be submitted as fully stipulated:

> If the Commissioner gives adequate and timely written notice to the petitioner or his counsel of his intention to claim additional interest under section 6621(d), the counsel for the Commissioner may, at the trial session where the case is to be tried or submitted, make a motion, either orally or in writing, for leave to amend his answer to claim the additional interest. The Court will act favorably on such motion and allow the Commissioner to amend his answer, but it will be necessary for the Commissioner to submit a written amendment to his answer specifying the tax motivated transactions which he claims gave rise to the substantial underpayment. The Commissioner shall also serve such amendment on the petitioner.

> Judge Dawson advises that no inference should be drawn from this announcement as to what position the Court will adopt in other circumstances.

Such announcement did not deal with the treatment of motions in cases already tried; the Commissioner's motion in this case requires us to face that question now.

In some cases, it is obvious that to allow the Commissioner to raise an issue under section 6621(d) after the trial would be prejudicial to the petitioner. For example, if the Commissioner claims that there was an underpayment of tax attributable to a tax motivated transaction described in his regulations under section 6621(d)(3)(A)(iv) or (B), the petitioner would be prejudiced if he was denied an opportunity to submit legal arguments in objection to such regulations, and he might be prejudiced if he was denied an opportunity to present evidence regarding the effect of such transactions. Thus, it would be an abuse of discretion for this Court to allow the Commissioner to amend his answer and claim additional interest under section 6621(d) in all cases after a trial. See *Commissioner v. Erie Forge Co.*, 197 F.2d at 903; *Estate of Horvath v. Commissioner*, 59 T.C. 551, 555–556 (1973); cf. *Ferrill v. Commissioner*, 684 F.2d at 265; *Henningsen v. Commissioner*, 243 F.2d at 959.

In the present case, the Commissioner argues that section 6621(d) is applicable because there was an overvaluation of property described in section 6621(d)(3)(A)(i) or a disallowance of losses described in section 6621(d)(3)(A)(ii). He maintains that those matters were at issue in the trial of the case, that the petitioners had an opportunity to present any evidence that they wished to establish that such transactions did not occur, and that in their brief, the petitioners had an opportunity to present any relevant arguments concerning such transactions. Under such circumstances, the Commissioner takes the position that the petitioners would not be prejudiced by allowing him to raise this issue at this time.

If, in fact, there is no additional evidence or arguments that the petitioners can present, granting the Commissioner's motion would not prejudice them, and it would be an abuse of discretion to deny the motion. *Commissioner v. Ray, supra; Buffalo Union Furnace Co. v. Helvering, supra*; cf. *International Banding Machine Co. v. Commissioner*, 37 F.2d 660 (2d Cir. 1930), revg. 12 B.T.A. 1062 (1928). Thus, it would be arbitrary for the Court to adopt the general practice of denying all motions by the Commissioner to claim additional interest when the motions are made after trial. It is necessary to

examine the particular circumstances of each case to ascertain whether the granting of such a motion would prejudice the petitioners.

As in so many shelter cases, the Commissioner here has asserted numerous, alternative grounds for the disallowance of all or portions of the partnership's losses. Not all of these grounds are listed as "tax motivated transactions." For example, the Commissioner's principal position with respect to the film depreciation deductions is that the partnership did not acquire a depreciable interest in the film. If we were to find that the partnership did not in fact acquire a depreciable interest in the film, we would not have to decide whether the film was overvalued in order to determine that the partnership was not entitled to a depreciation deduction. The Commissioner also contends that, if the partnership acquired a depreciable interest in the film, the amount of a promissory note given to purchase the film must be excluded from the film's basis because the debt was too contingent. If we were to disallow a portion of the partnership's depreciation deductions on this ground, we likewise might not have to determine whether the film was overvalued. See, e.g., *Estate of Baron v. Commissioner*, 83 T.C. 542, 549 (1984), on appeal (2d Cir., Mar. 26, 1985). Similarly, in other movie shelter cases, we have disallowed depreciation deductions without reaching the valuation issue where the partnership involved had misapplied the income forecast method of depreciation. See, e.g., *Greene v. Commissioner*, 81 T.C. 132 (1983); *Wildman v. Commissioner*, 78 T.C. 943 (1982). In cases involving alternative grounds, the Commissioner may contend that section 6621(d) requires us to decide issues which we might otherwise avoid, in order that the additional interest may be collected. On the other hand, the petitioner might maintain that, if no difference in the amount of the deficiency would result, we must decide the case on a ground, if available, which is not a "tax motivated transaction" for purposes of section 6621(d). Furthermore, if we were to decide that there is a deficiency on several alternative or overlapping grounds, some of which are listed as "tax motivated transactions" and some of which are not, the parties may dispute whether all, a part, or none of such underpayment is "attributable to" the "tax motivated transactions."

Because there are significant legal questions which might be raised as to the application of section 6621(d) to the present case, we hold that the Commissioner may not seek to amend his answer to invoke such section after the petitioners have submitted their final brief. However, we express no opinion as to the suitability of amending an answer after briefs have been submitted where the sole issue in the case is the overvaluation of a single asset (such as in a charitable contribution case) or is the disallowance of losses under the "at risk" rules of section 465(a). Obviously, the multiplicity of transactions and issues which may be involved in other cases prevents us from establishing a hard and fast rule.

*An appropriate order will be entered.*

Reviewed by the Court.
DAWSON, FAY, STERRETT, WILBUR, CHABOT, NIMS, PARKER, SHIELDS, CLAPP, SWIFT, JACOBS, and WRIGHT, *JJ.*, agree with the majority opinion.
KÖRNER, HAMBLEN, COHEN, and GERBER, *JJ.*, did not participate in the consideration of this case.

WHITAKER, *J.*, concurring: Our Rule 41(a) governs amendments to pleadings under the circumstances of this case.[1] As here pertinent, the rule specifies that "leave [to amend] shall be given freely when justice so requires." The majority appears to interpret the rule to preclude amendments only where there is prejudice[2] to the opposite party. But prejudice may be avoided where the new issue either needs no new evidence or the record is reopened to receive new evidence and the opposing party is allowed to present new arguments. Either or both of these solutions could have been applied to avoid prejudice here. But the majority further refines the rule to deny leave to amend after the filing of petitioner's final brief when "significant legal questions" are or may be raised by the amendment. The majority implies that if no significant

[1]Rule 41(b) is not applicable. This issue was not tried by express or implied consent.

[2]Although the majority use the terms "surprise" and "substantial disadvantage" as well as "prejudice," the latter appears to be all inclusive.

legal questions were raised we should allow the amendment. While I agree with the result, I travel there by a different path.

I am not convinced that the work "justice" in our Rule is always satisfied if prejudice is avoided. We should allow an amendment when required by justice, but we should also deny leave to amend when justice so requires, irrespective of prejudice. In this case, both justice and economy of judicial effort dictate the denial of leave to amend the answer irrespective of whether or not significant legal questions are presented.

It should be an exceedingly rare occasion when we would allow respondent to increase the claimed deficiency against the petitioner or assert a new ground by amendment to the answer after a case has been submitted. In the case before us, respondent's motion was filed more than 8 months after trial and 10 days after petitioner's brief was filed. The Tax Reform Act of 1984 became law a few days after the trial of this case, and respondent sat on his opportunity to amend for more than 8 months. It seems to me that justice does not require petitioners to incur additional and to some extent duplicative legal expense to respond to this new issue which could have been raised well before any work had started on petitioner's brief.

Moreover, although section 6621(d) clearly is intended to be applied to interest accruing after December 31, 1984, the conferees also intended this provision to assist this Court in "managing" our docket and "reducing" our backlog. While we were admonished "to assert, without hesitancy in appropriate instances, the penalties" provided us, including section 6621(d), it is obvious that reopening the record in a submitted case for evidence or briefing so as to permit retroactive application of this statute to these petitioners hinders management of our docket and reduction of our backlog. Neither is there any reason to believe that such application of the statute would have any proper "in terrorem" effect on these or other taxpayers. It might be apprehended as simply abusive. In the absence of clearer direction from Congress, this is simply not an "appropriate" case for the application of section 6621(d). Both justice and judicial economy, not the presence or absence

of significant legal issues, require the denial of leave to amend. I would deny respondent's motion on these grounds.

GOFFE, *J.*, agrees with this concurring opinion.