ARNOLD T. FORSETH, ET AL., [1] Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent Forseth v. Commissioner
Docket Nos. 27126-82, 1685-83, 7702-83, 7703-83, 32763-83, 2544-84, 3346-84.
United States Tax Court
T.C. Memo 1985-279; 1985 Tax Ct. Memo LEXIS 355; 50 T.C.M. (CCH) 111; T.C.M. (RIA) 85279; June 11, 1985. Edward G. Lavery and Larry K. Hercules, for the petitioners. William D. Hardeman, for the respondent. KORNER MEMORANDUM OPINION KORNER, Judge: This matter is before the Court on respondent's motion in each case for leave to amend his answer so as to assert the applicability of section 6621(d), [2] as added by section 144 of the Tax Reform Act of 1984, Pub. L. 98-369, 98 Stat. 682. *357 Section 6621(d)provides for an increase in the interest rate due on underpayments where there is a "substantial underpayment" (an underpayment exceeding $1,000) in any taxable year "attributable to 1 or more tax motivated transactions." Sec. 6621(d)(1) and (2). A "tax motivated transaction" is defined as: (i) any valuation overstatement (within the meaning of section 6659(c)), (ii) any loss disallowed by reason of section 465(a) and any credit disallowed under section 46(c)(8), (iii) any straddle (as defined in section 1092(c) without regard to subsections (d) and (e) of section 1092), and (iv) any use of an accounting method specified in regulations prescribed by the Secretary as a use which may result in a substantial distortion of income for any period. [Sec. 6621(d)(3)(A)] In each of the instant cases, respondent contends that there was an underpayment in excess of $1,000, which was attributable to a "straddle," as defined in section 1092(c), and hence to a tax motivated transaction. Under section 1092(c), the *358 term "straddle" means "offsetting positions with respect to personal property." A taxpayer holds such "offsetting positions," in turn, when "there is a substantial diminution of [his] risk of loss from holding any position with respect to personal property by reason of his holding 1 or more other positions with respect to personal property * * *." Section 1092(c)(2)(A). Under section 6214(a), this Court has jurisdiction to consider a claim by respondent for an increased deficiency or addition to tax at any time before entry of a final decision. Ferrill v. Commissioner,684 F.2d 261, 265 (3d Cir. 1982), affg. per curiam a Memorandum Opinion of this Court; Henningsen v. Commissioner,243 F.2d 954 (4th Cir. 1957), affg. 26 T.C. 528 (1956). However, it is clear that the right to amend a pleading under section 6214(a) is not unqualified. Section 7453 expressly authorizes this Court to adopt rules governing practice before it. Pursuant to Rule 41(a), [3] pleadings may be amended after the case has been placed on a trial calendar and over the *359 objection of the opposing party only by leave of the Court "when justice so requires." If there is evidence of surprise or substantial disadvantage to petitioner, respondent's motion to amend should be denied because it is the purpose of section 6214(a) to give petitioner a fair opportunity to answer and resist the claim before it is considered by the Court. Ferrill v. Commissioner,supra at 265; Henningsen v. Commissioner,supra at 959. In a recent Court reviewed opinion, Law v. Commissioner,84 T.C. No. 64 (May 23, 1985), we denied a motion filed by respondent after his opening brief and the taxpayers' answering brief, but before his reply brief, to amend his answer so as to assert additional interest under section 6621(d). On the facts of that case, we determined that while the proposed amendment might not require a further trial, it did present new legal issues of which the taxpayers were without notice when they submitted their answering brief. Since respondent had asserted numerous alternative grounds for disallowance *360 of the partnership losses there in issue, not all of which were "tax motivated transactions," within the meaning of section 6621(d)(3)(A), we found the potential for severe prejudice to the taxpayers, as follows: In cases involving alternative grounds, the Commissioner may contend that section 6621(d) requires us to decide issues which we might otherwise avoid, in order that the additional interest may be collected. On the other hand, the petitioner might maintain that, if no difference in the amount of the deficiency would result, we must decide the case on a ground, if available, which is not a "tax motivated transaction" for purposes of section 6621(d). Furthermore, if we were to decide that there is a deficiency on several alternative or overlapping grounds, some of which are listed as "tax motivated transactions" and some of which are not, the parties may dispute whether all, a part, or none of such underpayment is "attributable to" the "tax motivated transactions." [Law v. Commissioner,supra.] The trial in the instant cases was held in Dallas, Texas between May 16 and May 19, 1984. On motion of petitioners, the Court ordered on May 19, 1984, that *361 the record would remain open until August 17, 1984, so as to allow time for petitioners to take the testimony of an additional witness. On August 6, 1984, petitioners moved, with respondent's concurrence, to close the record and to establish a briefing schedule. Petitioners' motion was granted on August 8, 1984, and initial briefs were filed in October (for petitioners) and November (for respondent) of 1984, and reply briefs were filed by both parties in mid-January of 1985. Respondent's instant motions were filed almost four months later, on May 6, 1985. In each such motion, respondent represents that "[d]iscussions with opposing counsel reveal that this motion is opposed." The principal issue in these cases involves the deductibility of losses resulting from petitioners' alleged dispositions in a London "principals market" [4] of certain forward contracts, each of which allegedly constituted one "leg" of a commodity straddle in gold and platinum. As in Law, respondent has raised numerous alternative grounds for disallowance of the losses, including the following: (1) The alleged contracts were fictitious or preconceived shams lacking economic substance; (2) the primary *362 profit motive test applies, and petitioners' primary motives for entering into the transactions in issue were not to realize an economic profit, but to defer taxes; and (3) even if the transactions were not shams and were engaged in with a primary profit motive, petitioners' resulting losses were capital rather than ordinary losses. In the event that we uphold respondent's positions on the basis of his second or third theories, supra, it appears that any underpayment would be attributable to a "tax motivated transaction," viz, a straddle as defined in section 1092(c).[5] However, if we uphold respondent's position on the basis of his first theory, supra, then the losses in issue would have derived from fake or fictitious transactions which would not be recognized for Federal income tax purposes. See Julien v. Commissioner,82 T.C. 492 (1984). Cf. Miller v. Commissioner,84 T.C. No. 55 (May 13, 1985). *363 In that event, it could hardly be contended (and it does not appear on the full record in this matter that respondent so contends) that the transactions constituted real straddles, "as defined in section 1092(c)," excerpted supra. In his instant motions, as in Law, respondent has thus raised numerous alternative grounds for disallowance, not all of which are "tax motivated transactions," as defined in section 6621(d)(3)(A).[6] The same considerations that formed the basis for our denial of respondent's motion in Law, therefore compel our *364 denial of his motions in the instant cases. [7]
*365 An appropriate order will be issued.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Gerald R. Formsma and Constance Y. Formsma, docket No. 1685-83; Stephen A. Mahoney III and Mary Ann Mahoney, docket No. 7702-83; Richard H. Bramblett and Patsy J. Bramblett, docket No. 7703-83; David C. Enrici and Marianne Enrici, docket No. 32763-83; Raymond Wooldridge and Ida Wooldridge, docket No. 2544-84; Lawrence H. Easterling, Jr. and Phyllis R. Easterling, docket No. 3346-84.↩
2. All section references herein are to sections of the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
3. All references to Rules herein are to the Tax Court Rules of Practice and Procedure.↩
4. In such market, which was unrelated to the London Metal Exchange, forward positions in gold and platinum were allegedly traded over the telephone between principals, one of whom was "making a market" in such positions.↩
5. We note that sec. 6621(d)(3)(B) authorizes the Secretary by regulations to specify additional types of tax motivated transactions, and that under temporary regulations promulgated on December 28, 1984, the list of such transactions is expanded to include "any deduction disallowed for any period under section 183, relating to an activity engaged in by an individual or an S corporation that is not engaged in for profit." Q-4 and A-4 of sec. 301.6621-2T, Proced. and Admin. Regs. (Temporary), 49 Fed. Reg. 50391↩-50394 (Dec. 28, 1984). Respondent does not rely on this regulation in his instant motions.
6. We recognize that our holding means that a real straddle not meeting the requisite profit standard might constitute a "tax motivated transaction" under sec. 6621(d), whereas a purely fictitious "straddle" would not.While this result might seem anomalous, we believe that it is the necessary consequence of the absence of such factual sham transactions from the statutory or regulatory definitions of tax motivated transactions, and of the explicit inclusion by Congress, by reference to the definition of "straddle" in sec. 1092(c)↩, of transactions which are straddles not just in form but in substance.
7. In Law v. Commissioner,84 T.C. No. 64 (May 23, 1985), respondent's motion was filed more than eight months after trial and ten days after the taxpayer's brief was filed. In the instant cases, respondent's motions were filed almost a full year after trial and some four months after the close of the briefing schedule. Since the Tax Reform Act of 1984 became law on July 18, 1984, respondent delayed exercising his opportunity to move to amend in these cases for more than ten months. We therefore believe that the observation of Judge Whitaker in his concurring opinion in Law - that "justice does not require petitioners to incur additional and to some extent duplicative legal expense to respond to this new issue which could have been raised well before any work had started on petitioner's brief," - applies in each of the instant cases, afortiori.↩