Russell McCaulley v. Commissioner.
McCaulley v. Commissioner
Docket No. 101-62.
United States Tax Court
T.C. Memo 1964-4; 1964 Tax Ct. Memo LEXIS 330; 23 T.C.M. (CCH) 12; T.C.M. (RIA) 64004; January 9, 1964
Julie M. Reardon and Gene W. Reardon, 2424 First National Bank Bldg., Denver, Colo., for the petitioner. Marvin F. Peterson, for the respondent. HOYT
Memorandum Findings of Facts and Opinion HOYT, Judge: Deficiencies in income taxes, penalties, and additions to tax for the years indicated are determined and contested as follows: Addition To
Tax Under
Negli-
1954 Internal
Taxable Year
Delinquency
gence
Revenue Code
Ended
Deficiency
Penalty
Penalty
Sec. 6654
December 31, 1957
$1,224.14
$105.04
$21.01
December 31, 1958
1,152.32
73.68
14.74
December 31, 1959
1,682.46
214.58
42.92
$14.14
*331 The issues are whether petitioner received or was entitled to receive income from a partnership or joint venture with his then wife in the years in question from the operation of a florist business, and, if so, how much; and whether or not petitioner is subject to penalties and additions to tax for his failure to file returns and pay income or estimated income taxes for the years in question or any of them, and, if so, how much. Findings of Fact Some of the facts have been stipulated and are found accordingly. The petitioner resides at 2535 Bluff Street, Boulder, Colorado. During the taxable years here involved, 1957, 1958, and 1959, he was married to Helen McCaulley and was employed by the Public Service Company of Colorado. In such employment he earned gross wages subject to withholding by his employer in the following amounts: Year
Wages
Withholding
1957
$5,818.54
$803.99
1958
6,116.68
857.60
1959
5,930.64
824.16
In prior years the petitioner reported his income on the cash receipts method and filed his returns on the calendar year basis. He did not file income tax returns for the three years in issue. If he had filed such returns he would *332 have filed them with the district director of internal revenue for the district of Colorado. He is entitled to a credit for income tax withheld against any deficiencies determined herein in the amounts specified above: $803.99 for 1957; $857.60 for 1958; and $824.16 for 1959. On December 1, 1957, the petitioner and his then wife, Helen McCaulley, purchased a floral business known as "Haenselman's For Flowers" which business was located in Boulder, Colorado. The purchase price was $6,384. The purchase price was paid by issuance of a check in the amount of $3,282 written on the Haenselman's account on December 4, 1957, and the execution of a promissory note by the petitioner and Helen in the amount of $3,102 on November 30, 1957, payable on or before December 31, 1957. This note was satisfied by payment from Helen's separate funds. On November 30, 1957, a lease on certain real and personal property in Boulder used by the floral business was assigned to the petitioner and Helen. On December 2, 1957, the petitioner deposited the sum of $4,082.49 in the Haenselman's checking account, such sum representing the proceeds of a loan made by the petitioner for repayment of which he is individually *333 liable. A few days later, on December 5th, petitioner and Helen deposited $1,500 in the business account which sum was derived from a loan, for repayment of which both petitioner and Helen are jointly liable. After the December 4th payment from the business checking account, the beginning balance was $2,300.49. Both the petitioner and Helen McCaulley were authorized to draw checks on the business account from December 2, 1957 to October 12, 1959, and they both exercised their authority by writing checks against this account. A rubber stamp for endorsement of checks for deposit to the business account was acquired, which stamp contained only petitioner's name as depositor. The bank statements for such account showed the following balances: December 31, 1957 and January 1, 1958
$2,720.80
December 31, 1958 and January 1, 1959
1,858.05
October 12, 1959
576.62
On October 12, 1959, this checking account was closed by the withdrawal of the balance on that date by Helen McCaulley. About the same time or shortly thereafter and sometime during the year 1959, Helen brought an action for divorce against the petitioner in the Boulder District Court and on December 7, 1959, that *334 court issued a restraining order against the petitioner directing him to vacate the residence of the parties and the premises of the floral business in Boulder. This order was made effective as of the 9th day of November 1959. On March 11, 1960, the Boulder District Court entered its decree of divorce in the action brought by Helen against the petitioner granting her a divorce and awarding her the business known as Haenselman's Flowers, and all property located at the business premises. The court in that action referred to the business property as jointly owned by the parties and awarded it to Helen to be her sole and separate property. In the divorce decree the court also awarded a 1958 DeSoto automobile to the defendant, the petitioner herein. Sometime in 1960, after July 15th of that year, Helen filed her own individual income tax returns for the years 1957, 1958, and 1959, and Form 1065, United States Partnership Return of Income, for Haenselman's Flowers, for the same years. These partnership returns showed the following net income: 1957
$1,517.84
1958
616.16
1959
4,300.40
The partnership returns also showed that the petitioner and Helen were equal partners *335 in the floral business, each receiving 50 percent of the partnership's profits. As indicated above, petitioner filed no individual returns for any of the years here involved. In the intervening years between December of 1957 and October of 1959, the petitioner and his wife, Helen, lived in an apartment which was part of the premises leased by the floral business and assigned when the business was purchased. The entire premises were rented for $275 per month and the rental value for the apartment was $75 per month. The petitioner and his wife, Helen, understood and agreed that they would acquire and operate the Haenselman's floral business as a joint venture or partnership. They were joint owners of the business and both of them contributed their services to the business operation. They agreed that the petitioner was to operate the greenhouse and be in charge of the books and records of the business, whereas Helen was to operate the retail store and do the floral designing. Both of the parties had had previous experience in the floral business; both of them were members of the Florist Telegraph Association during the years in question; both of them wrote checks on the business' checking *336 account, as previously indicated; both of them appeared in the telephone book's "yellow pages" and in all other advertising as owners of the business; both of them were shown on personal property tax receipts as the owners of Haenselman's and for December 1957 on the Colorado business' retail sales tax return, business ownership of Haenselman's was shown as "Russell and Helen McCaulley." In addition, the bill of sale for the business and the assignment of business lease for the premises and florist business equipment were to petitioner and Helen. During the years here involved, petitioner operated the greenhouse, purchased supplies for the business, kept such business books and records as were maintained, helped prepare and place the advertising and waited on customers in the retail shop when needed; Helen ran the retail end of the business, did the designing and waited on customers generally; she worked very long hours in the business, six or sometimes seven days a week. Petitioner also held down his full-time job with the Public Service Company. He worked in the floral business in the evenings and in his spare time. Petitioner and his wife hoped that the business they bought *337 in 1957 would be financially successful and that eventually it would provide sufficient profits to permit the payment of a salary to Helen. They did not agree or understand that a salary would be paid to her during the years in question and she received no salary from Haenselman's in 1957, 1958, or 1959. She did pay some personal expenses of a very minor amount in the taxable years here involved with business checks, and petitioner also withdrew cash from the business of an undisclosed amount on at least two occasions and admittedly from time to time to provide evening meals. According to the tax returns filed by Helen in 1960 on behalf of the business partnership the following income and profits were realized by the business: 1957
(From 12-4 through 12-31)
Gross receipts
$2,449.54
Cost of goods sold
525.25
Gross profit
1,924.29
Total deductions
406.44
Net profit
1,517.85
Ordinary income
1,517.85
Ordinary income to petitioner
758.92
Ordinary income to Helen
758.93
1958
Gross receipts
$21,780.90
Cost of goods sold
13,441.45
Gross profit
8,339.45
Total deductions
7,723.29
Net profit
616.16
Ordinary income
616.16
Ordinary income to petitioner
308.08
Ordinary income to Helen
308.08
1959
Gross receipts
$32,882.61
Cost of goods sold
16,088.26
Gross profit
16,794.35
Total deductions
12,493.95
Ordinary income
4,300.40
Ordinary income to petitioner
2,150.20
Ordinary income to Helen
2,150.20
*338 In all of the partnership information returns depreciation was claimed on furniture and fixtures allegedly acquired on December 4, 1957, at a cost of $4,619. However, it is apparent that this amount of depreciation was claimed in error. The partnership information returns also claimed depreciation on a 1953 Chevrolet panel acquired in December of 1957 at a cost of $700 and office and store machines acquired the same date at a cost of $103.43. Furniture and fixtures at such cost were not acquired in 1957 in the purchase from the former owners of Haenselman's. On or about December 1, 1957, the petitioner and Helen received the following assets: 1. An adding machine with a value of $65. 2. A 1953 Chevrolet Panel with a value of $700. 3. Pottery and floral inventory and supplies with a value of $1,869. 4. The use of the name "Haenselman's For Flowers" and the goodwill of that business with a value of $3,750. Later in December of 1957, the floral business purchased a cash register for $38.43, and the following year, in January of 1958, another cash register was acquired at a cost of $200. During the taxable years here involved all cash and charge sales made in the operation *339 of the Haenselman's For Flowers business were recorded on cash register tapes and the totals taken from these tapes were reported on the 1065 forms filed by Helen in 1960 as gross receipts. These same gross sales or gross receipts were reflected in the business sales journal. Also during the taxable years in question the business maintained an inventory of merchandise, and while neither the petitioner not Helen ever took an actual inventory, as such, there was one for the business at the end of each of the taxable years in the amount of approximately $1,000. Business expenses for the operation of the florist business were paid as follows: 1957
1958
1959
Business expenses by checks
$844.34
$20,908.60
$28,691.53
Business expenses by cash
33.43
663.28
632.48
Total
$877.77
$21,571.88
$29,324.01
Less: Personal use of apartment
75.00
900.00
900.00
Total business expenses
$802.77
$20,671.88
$28,424.01
On the partnership information returns filed by Helen for Haenselman's, she elected to depreciate the following assets in the following manner: Item
Salvage Value
Method
Rate
Delivery truck
$140 [1]
Straight line
25%
Adding machine and cash registers
Straight line
10%
*340 The following depreciation deductions should be allowed the business as follows: Date
Sal-
Item
Acquired
Cost
vage
Method
Cash register #1
Dec. 1957
$ 38.43
None
S/L
Adding machine
Dec. 1957
65.00
None
S/L
Delivery truck
Dec. 1957
700.00
$140
S/L
Cash register #2
Jan. 1958
200.00
None
S/L
Total depreciation allowed
Item
Rate
1957
1958
1959
Cash register #1
10%
$ .32
$ 3.84
$ 3.84
Adding machine
10%
.54
6.50
6.50
Delivery truck
25%
14.58
140.00
140.00
Cash register #2
10%
20.00
20.00
Total depreciation allowed
$15.44
$170.34
$170.34
The petitioner knew that he was required to file Federal income tax returns for the years 1957, 1958, and 1959, but he failed to do so because the records which he maintained and which were maintained for the floral business were not adequate. Findings of Ultimate Facts The petitioner and his wife, Helen McCaulley, were partners in the floral business known as "Haenselman's For Flowers" during the period December 1, 1957 through December 31, 1959, and the petitioner was taxable *341 on one-half of the net profits derived from that business operation for those years as follows: 1957
1958
1959
Gross receipts
$2,449.54
$21,780.90
$32,882.61
Less: Purchases and business
( 802.77)
(20,671.88)
(28,424.01)
expenses
Depreciation
( 15.44)
( 170.34)
( 170.34)
Cash register #2
Jan. 1958
200.00
None
S/L
10%
20.00
20.00
Total depreciation allowed
$15.44
$170.34
$170.34
The petitioner knew that he was required to file Federal income tax returns for the years 1957, 1958, and 1959, but he failed to do so because the records which he maintained and which were maintained for the floral business were not adequate. Findings of Ultimate Facts The petitioner and his wife, Helen McCaulley, were partners in the floral business known as "Haenselman's For Flowers" during the period December 1, 1957 through December 31, 1959, and the petitioner was taxable on one-half of the net profits derived from that business operation for those years as follows: 1957
1958
1959
Gross receipts
$2,449.54
$21,780.90
$32,882.61
Less: Purchases and business
( 802.77)
(20,671.88)
(28,424.01)
expenses
Depreciation
( 15.44)
( 170.34)
( 170.34)
Beginning inventories
(1,869.00) [1]
( 1,000.00)
( 1,000.00)
Add: Ending inventories
1,000.00
1,000.00
1,000.00
Net profit
$ 762.33
$ 938.68
$ 4,288.26
One-half to petitioner
$ 381.16
$ 469.34
$ 2,144.13
*342 The petitioner's failure to file individual Federal income tax returns for the taxable years 1957, 1958, and 1959 was due to willful neglect and without reasonable cause, and the underpayment of his Federal income taxes for those years was due to his negligence and his disregard of statutory requirements and rules and regulations. Opinion Sections 761(a) and 7701(a)(2) of the Internal Revenue Code of 1954 define the term "partnership" in such a manner as to include any joint venture by means of which a business is carried on and which is not a corporation, trust, or estate. A partner is any member of such a venture or organization. The petitioner and his then wife, Helen McCaulley, joined together to operate the floral business known as "Haenselman's For Flowers" when they purchased the business in 1957, and they continued it
Beginning inventories (1,869.00) [1] ( 1,000.00) ( 1,000.00)
Add: Ending inventories 1,000.00 1,000.00 1,000.00
Net profit $ 762.33 $ 938.68 $ 4,288.26
One-half to petitioner $ 381.16 $ 469.34 $ 2,144.13 *343 The petitioner's failure to file individual Federal income tax returns for the taxable years 1957, 1958, and 1959 was due to willful neglect and without reasonable cause, and the underpayment of his Federal income taxes for those years was due to his negligence and his disregard of statutory requirements and rules and regulations. Opinion Sections 761(a) and 7701(a)(2) of the Internal Revenue Code of 1954 define the term "partnership" in such a manner as to include any joint venture by means of which a business is carried on and which is not a corporation, trust, or estate. A partner is any member of such a venture or organization. The petitioner and his then wife, Helen McCaulley, joined together to operate the floral business known as "Haenselman's For Flowers" when they purchased the business in 1957, and they continued it thereafter through the calendar years 1958 and 1959 as a partnership in the tax sense. Cf. Commissioner v. Culbertson, 337 U.S. 733 (1949), and Commissioner v. Tower, 327 U.S. 280 (1946). The respondent has determined that the petitioner shared equally in the partnership income from the floral business. *344 This determination is presumptively correct, and the burden is on the petitioner to prove that he did not share equally in the partnership profits from the floral business, or that the amount determined by the Commissioner as his share of the partnership earnings is incorrect. Welch v. Helvering, 290 U.S. 111 (1933). This he has failed to do. Petitioner, who was his only witness, testified that he did not receive any share of the partnership profits, that he did not withdraw any money from it, that he worked at least 40 hours a week at his regular job, and that although he asked his wife to enter into a written partnership agreement with him, she refused "to take out partnership papers." When the business was first purchased, the petitioner told his wife that "as soon as we got the thing going right that she take out a salary and anything that was over, then we would divide. Our aim was to buy the property." Helen McCaulley testified that she and petitioner intended to operate the business as a partnership or joint venture and that on at least two occasions the petitioner cleaned out the cash register. It does not appear from the record how much petitioner thus withdrew *345 on these occasions. In any event, a partner would be required to report and pay tax upon his share of partnership net profits, even if the same were not withdrawn from the business operation. It is the right to the income not the withdrawal or non-withdrawal that determines taxability. The partnership's income was computed and reported by Helen McCaulley by using a combination of the accrual and cash method of accounting. Gross receipts were reported on both the cash and accrual methods because sales were recorded this way on the cash register tapes and in the sales journals of the business. Deductions of the business operation were claimed on the cash basis because the only records of expenditures were cash pay-outs, checks, and bank statements, and no journals or books of account showing accrued purchases or expenses were maintained. Under section 446 of the 1954 Code, taxable income is to be computed by the method of accounting regularly used by the taxpayer in keeping his books and a combination of accrual and cash methods is permitted. On the entire record we find that the combination method used by Helen in reporting the partnership income was proper to reflect partnership *346 income and expenses most clearly under the circumstances. Petitioner has not presented any evidence that would justify any other result. Petitioner contends that from 1 to 2 percent of gross sales should be allowed as a business deduction for bad debts since the partnership operation conducted both a cash and a credit business. The petitioner testified to this effect. However, he has adduced no evidence to substantiate this or to establish how much of the annual business was on credit as distinguished from cash. Also he has failed to establish either worthlessness of any debt or any basis for setting up a reserve for business bad debts. We, therefore, cannot allow any additional business deduction for same. Petitioner has not met his burden to overcome either the correctness of the respondent's determination or the accuracy of the partnership business returns filed by his wife. We cannot allow additional deductions merely because he complains and alleges that there are some which might be properly claimed. His unsubstantiated estimate of a percentage of gross sales is insufficient evidence on which to make an allowance. Under income tax regulations section 1.471-1 *347 it is provided that inventories at the beginning and end of each year are necessary to reflect taxable income correctly when the production, purchase or sale of merchandise is an income-producing factor. We have found that inventories in the amount of $1,000 for each year are disclosed by the facts of record, and that $1,869 of the initial purchase price for the business in December of 1957 should be allocated to the purchased inventory. However, under section 1.446-1(c)(2)(i), Income Tax Regs., where it is necessary to use inventories, the accrual method must be used as to purchases and sales. The partnership neither kept its books and records nor filed its partnership returns on the inventory, accrual basis, and no evidence was offered before us which would permit a determination of the taxable income of the partnership on this basis so as to fix petitioner's tax liability thereby. The only evidence before us is that as of November 17, 1959, there were business accounts payable totaling approximately $2,800. How much of this was for purchases is not disclosed nor did petitioner establish the amount due on an accrual basis for business purchases at any other *348 time. We therefore, can only allow what was shown and claimed by the partnership returns as filed in computing petitioner's share of that income. We have also found that the rental value of the apartment contained in the business premises and occupied by the petitioner and his wife for one month of 1957 and for the entire years 1958 and 1959 was $75 per month. Petitioner raised the question that he was not occupying it for the last few months of the 1959 year because during that period he and his wife were in the process of being divorced and he was restrained from entering the premises. However, petitioner and his wife were not divorced during 1959 and Helen continued to operate the premises during the remainder of that year. We can only conclude that the fair rental value of the apartment for all of 1959 was not a business expense and that the only allowable deduction for partnership purposes would be the balance of the rental paid, i.e., $200 per month. Based on these facts and the other evidence with respect to business expenses, the total business expenses allowable for the years involved insofar as the partnership operation is concerned, are as follows: 1957
$ 802.77
1958
20,671.88
1959
28,424.01
*349 As to the deductions for depreciation claimed by the partnership, it is clear that, as indicated in our findings, the business did not purchase furniture and fixtures for $4,619 as claimed on the partnership information returns filed by Helen for the years in issue. On all of the evidence, we hold that the amount claimed to have been paid for furniture and fixtures should instead be allocated as part of the cost of the business, for merchandise and goodwill as indicated by our findings. The summary included in our Findings of Ultimate Facts sets forth our conclusions as to the proper allocation of costs; the receipt of income and the allowance of deductions; and the net profits realized by the partnership for the years in question. It is unquestioned that the petitioner failed to file individual income tax returns for the years 1957, 1958, and 1959. The petitioner has not offered any explanation for this failure which could be considered as reasonable cause for his failure to file his returns; nor has any justification or excuse for this neglect on his part been shown. While it is true that the bulk of his income was from his regular employment and that withholding by his employer *350 from his wages paid the bulk of his tax, his opinion that the operation of the floral business would not result in profit does not explain or excuse his failure to ascertain the true situation or to file tax returns when the same were due under the law. No matter how honest or sincere such belief may have been, it does not constitute reasonable cause for his failure to file returns. Robert A. Henningsen, 26 T.C. 528 (1956), affirmed 243 F. 2d 954 (C.A. 4, 1957). The petitioner has failed to show that his failure to file returns was due to any reasonable cause. Likewise, he has not shown any reason for his neglect or disregard of rules and regulations so that he is subject to the penalties provided by section 6653(a) of the Internal Revenue Code of 1954. Because of adjustments to be made in computing the deficiencies and additions and because certain adjustments in the statutory notice of deficiency were not assigned as errors in the petition filed, Decision will be entered under Rule 50. Footnotes
1. Salvage value election made effective January 1, 1958.↩
1. This item was a part of the original purchase price of "Haenselman's."↩
1. This item was a part of the original purchase price of "Haenselman's."↩