CLYDE ROLAND AMSLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Amsler v. Commissioner
Docket No. 17853-83.
United States Tax Court
T.C. Memo 1986-185; 1986 Tax Ct. Memo LEXIS 426; 51 T.C.M. (CCH) 978; T.C.M. (RIA) 86185; May 5, 1986. *426 During the taxable years in issue, petitioner worked as a musician. As leader of the musical group, petitioner executed contracts for the group's performances. Certain contracts were executed by petitioner on behalf of a trust entity in an attempt to assign petitioner's income to the trust. Held, petitioner is liable for deficiencies in income taxes for unreported income received by the trust as compensation for his personal services as a musician. Held further, petitioner is liable for self-employment taxes attributable to the unreported income. Held further, petitioner is liable for an addition to tax under sec. 6651(a)(1), I.R.C. 1954, for failure to file timely his Federal income tax return. Held further, petitioner is liable for additions to tax under sec. 6653(a) for negligence or intentional disregard of rules and regulations. Clyde Roland Amsler, pro se. Jonathan J. Ono, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Chief Judge: Respondent determined by separate notices of deficiency dated April 5, 1983 deficiencies in the Federal income taxes of petitioner and additions to tax for the taxable years ended December 31, 1979 and December 31, *427 1980 as follows: Additions to Tax
Taxable Year
Deficiency
Sec. 6651(a)(1) [1]
Sec. 6653(a)
1979
$5,291.00
$529.10
$264.55
1980
3,710.00
186.00
After concessions, the issues for decision are whether petitioner has unreported compensation income for personal services as a musician, and whether petitioner is liable for self-employment taxes attributable thereto, for the 1979 and 1980 taxable years. Also at issue is whether petitioner is liable for additions to tax under section 6651(a)(1) for the 1979 taxable year for failure to file timely his Federal income tax return and under section 6653(a) for the 1979 and 1980 taxable years for negligence or intentional disregard of rules and regulations. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulated facts and exhibits attached thereto are incorporated herein by this reference. Petitioner, Clyde Roland Amsler, resided in Virginia City, Nevada at the time he filed his amended petition in *428 this case. Petitioner filed Federal income tax returns for the 1979 and 1980 taxable years, listing his filing status as "married filing separate return." Petitioner's 1979 return was signed on June 14, 1980 and received by respondent on June 17, 1980. During 1979 and 1980 petitioner worked as a musician and was the leader of a Dixieland musical group, which performed under various names as stated below. In 1979 petitioner and his group performed at Cactus Pete's Horseshu Club (the Horseshu Club) located in Jackpot, Nevada, and at the Eldorado Hotel-Casino (the Eldorado) located in Reno, Nevada. In 1980 petitioner and his group performed at Pier 67 Inc. (the Edgewater Inn) located in Seattle, Washington. Petitioner, as leader of the musical group, executed the contractual agreements for the group's performances. The contract with the Horseshu Club was signed by petitioner and listed the group's name as "Clyde Amsler." The contract with the Eldorado also was signed by petitioner, on behalf of Calza Trust, for performances by "Clyde Amsler's Dixielanders." Two separate contracts were executed with the Edgewater Inn by petitioner, on behalf of Calza Trust, for performances by the "Clyde *429 Amsler Trio." Calza Trust (the Trust) was formed as a Nevada trust on November 24, 1978 by petitioner as grantor. The Declaration of Trust (trust instrument) named Lois Zener Amsler, petitioner's wife, and Betty M. DeBard, petitioner's wife's sister, as its joint tenants in fee simple and its trustees. At trial, petitioner testified that he also was a trustee of the Trust. The trust instrument granted broad powers to the trustees, as follows: DECLARATION OF AUTHORITY * * * The Trustees shall have all the powers necessary, convenient or appropriate to effectuate the purposes of the Trust, and may take any action which they deem necessary or desirable and proper to carry out such purposes. Any determination of the purposes of the Trust made by the Trustees in good faith shall be conclusive. In construing the provisions of this Trust Indenture Declaration, the Trustees' Regulations and the Trust Minutes, the presumption shall be in favor of the grant of powers to the Trustees. The trust instrument provided that the purpose of the Trust was as follows: DECLARATION OF PURPOSE * * * The terms and conditions of this Trust Organization Indenture shall provide, under a common law right *430 to contract, the pursuit of personal happiness and the maximizing of lifetime efforts and the protection of an estate in order to promote the general welfare and achieve a life purpose and according to any personal moral or religious beliefs, which are all sustained by this Trust Organization. TO WIT: Whereas the Life Purpose is to sustain, protect and improve this Trust Organization for the Trust Certificate Holders to possess the things of this life sufficient to provide for growth, health, protection, education, refinement, recreation, welfare, expansion, preservation and continuation, it is believed that to fail to plan for such things will certainly cause failure of the estate purpose. therefore, it is proposed to use this Trust Organization as a plan for the achievement and improvement of a Life Purpose. This Trust Organization and the Life Purpose is sustained by Moral Belief that man is under a great Universal Spirit to replenish the earth and subdue it and have dominion over every living thing that moveth upon the face of the earth. Thus it is a Moral Belief that all are under a Divine Mandate to establish and care for and provide a Life Estate. The Trust was formed by *431 petitioner and other members of his family to preserve and maximize the estates of petitioner and his wife for the benefit of their estates' beneficiaries. At trial, petitioner testified that the Trust was formed by petitioner, his spouse and "other trustees' when he and his spouse were approximately 64 years old "in order to best perpetuate [and] enhance * * * [their] estate[s]." He continued, "We have committed our lifelong services to this trust. * * * We are doing this for our heirs, we issued beneficial certificates to them, and I hold a minority of those. [Petitioner's wife] Lois and her three children and my three children hold, by far, the majority of the beneficial interests. Upon our demise, they will come into the trust; they will be owners and trustees of the trust. * * * [W]e formed this trust in a sincere means, knowing that we're in the final phase of our lives. We've done this for a just purpose and for a sincere motivation." Petitioner added that "virtually everything" that he and his wife owned were conveyed to the Trust, including their real estate, personal property and musical instruments. At trial, petitioner stated that a separate Mastercard charge account *432 and bank account were kept for the Trust to be used exclusively for trust purposes. However, the accounts were maintained by petitioner and his wife. Also, petitioner and his wife were the persons authorized to draw checks on the bank account. Trust funds were to be used "[f]or purposes pertaining to the trust's business, only," in accordance with the "good judgment" of its trustees, again, petitioner, his wife and her sister. Trust expenditures were directed by its Board of Trustees, of which petitioner was a member. In the statutory notices of deficiency, respondent determined deficiencies in petitioner's Federal income taxes for the 1979 and 1980 taxable years based upon petitioner's failure to report income received by the Trust as compensation for his personal services as a musician. The deficiencies were based in part on petitioner's liability for self-employment taxes on the unreported income. Respondent also determined additions to tax under section 6651(a)(1) for the 1979 taxable year and under section 6653(a) for the 1979 and 1980 taxable years. OPINION The primary issue for decision is whether petitioner has unreported income for compensation received by the Trust for *433 petitioner's personal services as a musician. Respondent has determined deficiencies in the amounts of $5,291 and $3,710 in petitioner's Federal income taxes, based on unreported income in the amounts of $16,200 and $12,158 for the 1979 and 1980 taxable years, respectively. The parties have stipulated that, of the total amounts of the unreported income, $10,140 for 1979 and $5,250 for 1980 were paid to the other members of petitioner's musical group. Therefore, income in the amounts of $6,060 and $6,908 only remain in issue for the 1979 and 1980 taxable years, respectively. Petitioner argues that the amounts received for his musical performances do not constitute income to petitioner, but rather are taxable to, and in fact were reported by, the Trust. [2] *434 Respondent argues that the income is taxable to petitioner as the true earner of the compensation. Petitioner bears the burden of proof on this issue. Rule 142(a); Welch v. Helvering,290 U.S. 111, 115 (1933). A taxpayer cannot escape taxation by an assignment of his or her income to another entity. Lucas v. Earl,281 U.S. 111, 114-115 (1930). A fundamental principle of our income tax laws is that income is taxed to the one who earns it, Commissioner v. Culbertson,337 U.S. 733, 739-740 (1949), and taxation cannot be avoided by diverting the income to another entity, for example to a trust, as in the instant case. United States v. Basye,410 U.S. 441, 450 (1973). The Trust was formed by petitioner and other members of his family to preserve and maximize the estates of petitioner and his wife for the benefit of their estates' beneficiaries. the mere fact that the contracts for performances by petitioner were executed on behalf of the Trust, rather than in petitioner's own name, does not serve to shift the incidence of taxation away from petitioner for Federal income tax purposes. the proper taxpayer is not necessarily the recipient of the income, but rather is the person who has control over the earning of the income. Wesenberg v. Commissioner,69 T.C. 1005, 1010-1011 (1978). *435 The contracts executed by petitioner, on behalf of the Trust, with the Eldorado and the Edgewater Inn were negotiated by the trustees, that is, by petitioner, his wife, and his wife's sister. Petitioner cannot escape taxation for his personal services as a musician by this attempted transfer of his lifetime services to the Trust nor by his execution of contracts for his musical performances on behalf of the Trust entity. See Duncan v. Commissioner,756 F.2d 747, 748 (9th Cir. 1985), affg. per curiam an unpublished order of this Court; Hicks v. Commissioner,718 F.2d 1110 (9th Cir. 1983), affg. without published opinion a Memorandum Opinion of this Court. The sole case relied upon by petitioner is Laughton v. Commissioner,40 B.T.A. 101 (1939). In Laughton, the taxpayer had executed a contract with a corporation, Motion Pictures and Theatrical Industries, Limited (the corporation), who then loaned out the taxpayer's services as a movie actor. This Court found that the taxpayer's "only relationship with the contracts for the loaning of his services was to consent to the performance of the services provided for in such loan contracts" and that there was no assignment of the taxpayer's *436 income. Laughton v. Commissioner,supra at 106-107. Therefore, we concluded that the income received by the corporation was not taxable to the taxpayer individually. The facts in Laughton clearly are distinguishable from those in the instant case. Here, petitioner, and not the Trust, is the true earner of the income received for his performances as a musician. Petitioner's control over the earning of his income is evidenced by the fact that he was one of the trustees who negotiated the contracts for his musical performances. also, petitioner's control over the Trust's activities is demonstrated by his access to trust funds and direction over trust expenditures. Petitioner's conveyance of virtually all of his property interests to the Trust, and execution of contracts for his personal services in the name of the Trust, constitute an attempt to assign his income to the Trust, which cannot be respected for Federal income tax purposes. We conclude that amounts received by the Trust as compensation for petitioner's personal services as a musician are taxable to petitioner under section 61. [3] Accordingly, we sustain respondent's determinations of deficiencies in petitioner's Federal *437 income taxes based upon petitioner's failure to report income received by the Trust as compensation for his personal services. [4] *438 Respondent also determined deficiencies in petitioner's taxes based on petitioner's liability for self-employment taxes on the unreported income for the 1979 and 1980 taxable years. Section 1401 imposes a tax on income derived from self-employment, as defined in section 1402. [5] *439 Petitioner argues that no self-employment taxes are due as he did not earn any self-employment income during the taxable years in issue. Respondent argues that petitioner is liable for self-employment taxes because he worked as an independent contractor. Petitioner bears the burden of proof that he is not liable for any self-employment taxes. Simpson v. Commissioner,64 T.C. 974, 983 (1975). Self-employment taxes are imposed where an individual works as an independent contractor, Simpson v. Commissioner,supra at 988-989. However, self-employment taxes are not imposed on income or net earnings from a trade or business for "the performance of service by an individual as an employee," subject to certain statutory exceptions that are not applicable here. Section 1402(c)(2). The issue of whether a taxpayer is an independent contractor or an employee is a factual question, and among the factors to be considered is the degree of control exercisable by the taxpayer over the details of the work involved. Simpson v. Commissioner,supra at 984-985. As stated above, petitioner clearly exercised control over the earning of his income. Additionally, at trial, when *440 asked by the Court whether he was self-employed, petitioner stated, "I was working as an independent contractor, under the auspices of the trust." Accordingly, we sustain respondent's determinations that petitioner is liable for self-employment taxes. Respondent also determined that petitioner is liable for an addition to tax under section 6651(a)(1)[6] *441 for the 1979 taxable year for failure to file timely his 1979 Federal income tax return. Petitioner bears the burden of proof that the failure to file the return timely was due to reasonable cause. Horton v. Commissioner, 86 T.C.     (April 3, 1986) (slip op. at 13-14); Richardson v. Commissioner,72 T.C. 818, 827 (1979). Reasonable cause exists where a taxpayer has "exercised ordinary business care and prudence." Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. We conclude that petitioner has failed to demonstrate reasonable cause for the late filing of his 1979 return. Petitioner's 1979 return, prescribed to be filed as of April 15, 1980, was dated June 14, 1980 and received by respondent on June 17, 1980. Petitioner states that he "realized belatedly" that income to the Trust "erroneously" had been assigned to him personally, and that he needed additional time to request and receive "corrected" Forms 1099-NEC designating the Trust as the proper recipient of the income. However, petitioner did not request any extension of time to file his return. Moreover, petitioner's mistaken belief that he is not taxable does not constitute reasonable cause. See Henningsen v. Commissioner,26 T.C. 528, 536 (1956), affd. 243 F.2d 954, 958-959 (4th Cir. 1957). *442 [7] Accordingly, we sustain respondent's determination of an addition to tax under section 6651(a)(1).
Respondent also determined that petitioner is liable for additions to tax under section 6653(a) [8] *443 for the 1979 and 1980 taxable years due to negligence or intentional disregard of rules and regulations. Petitioner bears the burden of proof that the additions have been imposed improperly. Tomburello v. Commissioner, 86 T.C.     (Mar. 31, 1986) (slip op. at 11); Catalano v. Commissioner,81 T.C. 8, 17 (1983), affd. without published opinion sub nom. Knoll v. Commissioner,735 F.2d 1370 (9th Cir. 1984). Petitioner argues that the determined additions to tax are invalid, as all of the income in dispute has been reported and all taxes due have been paid. However, as stated above, there are deficiencies in petitioner's Federal income taxes for the 1979 and 1980 taxable years. The imposition of additions to tax under section 6653(a) is appropriate where a taxpayer attempts to deflect his or her tax liability by an assignment of income to another entity. Duncan v. Commissioner,756 F.2d 747, 748 (9th Cir. 1985), affg. per curiam an unpublished order of this Court. Therefore, we sustain respondent's determinations of additions to tax under section 6653(a). Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. At trial, petitioner testified that all of the income in issue was reported by the Trust on its Federal income tax returns (Forms 1041). However, when questioned by the Court with respect to whether a set-off against taxes paid by the Trust would be appropriate, petitioner replied that the Trust operated at a loss for the taxable years in issue, and, therefore, did not pay any taxes.
3. SEC. 61. GROSS INCOME DEFINED. (a) General Definition.--Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items: (1) Compensation for services, including fees, commissions, and similar items; * * *. ↩
4. The record is unclear to the extent to which petitioner may have reported income with respect to amounts received by the Trust. Petitioner has maintained that the income in issue is that of the musical group and therefore not his personal income. However, we note that petitioner has reported income based on Forms 1099-NEC from Calza Trust in the amounts of $3,120 and $3,600 for the 1979 and 1980 taxable years, respectively, which petitioner characterizes as income for professional services as a trustee of the Trust. To the extent that these amounts reported represent compensation to petitioner for his services as a musician under the contracts executed on behalf of the Trust, they are to be taken into account in the computations of the deficiencies under Rule 155.
5. Section 1402 provides in relevant part as follows: SEC. 1402. DEFINITIONS. (a) Net Earnings From Self-Employment.--The term "net earnings from self-employment" means the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business, * * *. (b) Self-Employment Income.--The term "self-employment income" means the net earnings from self-employment derived by an individual (other than a nonresident alien individual) during any taxable year; * * *. (c) Trade or Business.--The term "trade or business," when used with reference to self-employment income or net earnings from self-employment, shall have the same meaning as when used in section 162 (relating to trade or business expenses), except that such term shall not include-- * * * (2) the performance of service by an individual as an employee, * * *.↩
6. Section 6651 provides in relevant part as follows: SEC. 6651. FAILURE TO FILE TAX RETURN OR TO PAY TAX. (a) Addition to the Tax.--In case of failure-- (1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate; * * *.
7. See also Estate of Cady v. Commissioner,T.C. Memo. 1979-318, affd. by unpublished opinion 634 F.2d 631 (8th Cir. 1980); Anthony v. Commissioner,T.C. Memo. 1976-302, affd. by unpublished opinion 566 F.2d 1168 (3d Cir. 1977); Nelson v. Commissioner,T.C. Memo. 1974-239↩.
8. Section 6653 provides in relevant part as follows: SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income * * * Taxes.--If any part of any underpayment * * * is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment. * * *↩